## BURNHAM et al. v. TODD.

No. 10787.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1943.

Motion to Reform Judgment Denied Jan. 19, 1944.

340

J. Cleo Thompson, of Dallas, Tex., and H. P. Smead, of Longview, Tex., for appellants.

H. S. Lattimore, H. C. Ray, and Earnest E. Sanders, all of Fort Worth, Tex., for appellee.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

An involuntary proceeding in bankruptcy was instituted in the District Court for the Northern District of Texas against Harry W. Elliott. There was never an adjudication. Elliott in his answer invoked the then recently enacted Section 74 of the Bankruptcy Act, 11 U.S.C.A. § 202, and sought a composition and extension of his debts. On May 3, 1933, the court appointed Walter A. Todd custodian under Section 74, sub. b, with full authority to operate and carry on the business of the estate, which included active gas and oil wells in the East Texas oil field. A composition was agreed on and approved by which Todd's operation of the business as custodian was to continue for three years, and the debts were to be paid in that time from the operations and sales of property. It becoming evident that this would not be accomplished, a creditor petitioned the court to liquidate the estate under the provisions of Section 74, sub. l. After a hearing, on June 15, 1936, the court ordered a liquidation and appointed Todd as trustee of the estate, and ordered him to take over all the property and assets of the debtor formerly held by him as custodian; and to proceed to sell off the assets. No adjudication as a bankrupt was prayed or made. By March 25, 1937, liquidation had proceeded to the point where only four oil leases remained, and $101,000 was estimated as in sight to pay expenses of administration and $7,500 still due general creditors. The remaining fund was proposed to be divided among certain "certificate holders" to whom Elliott had sold interests in his oil properties. The court approved that disposition, and on May 14, 1937, entered an order that to reduce oil payments and royalties standing against these leases, "the said properties shall remain in the custody of the bankruptcy court and be operated by Walter A. Todd, Trustee, at a salary of $250 per month until the further orders of this Court". On July 14, 1939, an order was made that a notice be published requiring the filing of all claims by Oct. 1, 1939. The next thing appearing in the record before us is

the filing on Sept. 7, 1940, of the proceeding which resulted in this appeal.

Entitling his petition in the bankruptcy case, and addressing it to the judge, Walter A. Todd, trustee in bankruptcy, alleged due authority from the bankruptcy court, and complained of G. H. Burnham and J. H. Johnston, individually and as a partnership known as Burnham and Johnston, residing in Gregg County, Texas, in that between Jan. 1, 1934, and July 1, 1934, they had, without Todd's or the court's knowledge or authority secretly taken from an oil lease in Gregg County then in the custody of the court in bankruptcy and operated by Todd, oil in excess of 55,000 barrels, the highest price for the grade and quantity being $1.15 per barrel, which sum with interest they are bound and liable to pay. It was also alleged that the proceeding was not sooner filed because Todd had no notice of the taking until a few months previous to the filing of the petition, and it had been filed promptly on the conclusion of an investigation then made. The prayer was that G. H. Burnham and J. H. Johnston "show cause, if any they have, why they should not be compelled to pay summarily to your petitioner as trustee of the above estate in bankruptcy, the said sum of money, to-wit, compensation for the oil so taken with interest thereon * * * and ordered summarily to restore to your petitioner as trustee in bankruptcy the value of the oil so taken with interest as aforesaid".

The first defense made was that Burnham and Johnston were citizens of Texas residing in Gregg and Smith Counties, and not in the Northern District of Texas; and that the suit was one for damages for a conversion and ought to be a plenary one in the home district of one of them. Although the mention in the petition of the highest value of the oil as the measure of the reparation due smacks of damages for conversion, the petition as a whole is evidently a summary one for the restoration to the court's administrator of property wrongfully taken from its custody. The petition makes no allegation as to the title to the oil, but alleges only that it was from an oil lease which was in the custody of the bankruptcy court and which the petitioner was operating under the court's orders. The prayer is for a summary restoration of the value of the oil. It is common knowledge, and the evident assumption of the petition, that oil at the wells is soon mingled with other oil and disposed of, so that identification and restoration of the oil itself would after the lapse of years be impossible. When property taken from the custody of the court is put beyond the possibility of return, the taker can be required to make reparation by paying its value instead. In re Day, 34 Wis. 638; 53 C.J., Receivers, § 134; In re Denson, D.C., 195 F. 854; May v. Henderson, 268 U.S. 111, at page 119, 45 S.Ct. 456, 69 L.Ed. 870. The object of such a proceeding is not to try the title to the property, or to adjudicate any interest in it, but to maintain the integrity of the court's custody and its right to administer it. Even when a claimant invokes orderly judicial process to seize property which was in the possession of a voluntary bankrupt when he filed his petition and was adjudicated, the bankruptcy court can by summary proceedings compel its return. White v. Schloerb, 178 U.S. 542, 20 S.Ct. 1007, 44 L.Ed. 1183. And property never in the court's actual custody, but held by another for the bankrupt, is subject to the court's summary proceeding, when the possessor has no colorable adverse claim to it. Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405. The oil here was in the actual custody of the court, and Johnston and Burnham make no claim of right to it; they only say they did not take it. If they now had it, without question they might be required summarily to turn it over. Since they have done away with it, with equal certainty they may be required to substitute it with money.

Section 23 of the Bankruptcy Act, as amended by the Chandler Act in 1938, 11 U.S.C.A. § 46, which fixes the venue of "suits by the receiver and the trustee" as that in which the bankrupt might have sued, refers to plenary suits, in which contested rights are to be finally settled. It has no reference to proceedings like this where the court is asserting its own right to administer, touching which the bankrupt could never have sued anywhere.

Dismissal of the petition was further sought on the ground that Todd had no standing to sue, especially because the ultimate right to the estate had been decreed to be in the certificate holders. Section 74, sub. m, 11 U.S.C.A. 202, sub. m, provides: "In proceedings under this section * * * the title, powers, and duties of its (the court's) officers * * * and the rights and liabilities * * * of

all persons with respect to the property of the debtors * * * shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was filed." It therefore makes no difference that no adjudication was made. At the time the oil was taken Todd was a custodian with power to conduct the business, the equivalent of a receiver having such powers in an ordinary bankruptcy. He then had no title to the estate, but was the representative of the court and the parties to the case. When he became trustee, he became invested with title, just as trustees in bankruptcy are under Section 70, 11 U.S.C.A. § 110. He has never been removed or discharged as such. The fact that he has been put on a salary, and that it has been determined who shall receive the residue of the estate on its final distribution, does not alter his relation to the property or the court. He brought this petition by direction of the court, and it asserts a right of the court. A receiver, who has no title, might equally have brought it. Todd has standing in court.

■ Burnham and Johnston answered denying they had taken any oil, and demanded a jury trial. The court appointed a master. They moved to revoke the appointment and were overruled. This not being a suit at law for damages for a conversion of property, there was no right to a jury trial. It is a dependent proceeding in the bankruptcy cause, an exercise of the equitable powers of the court, just as in the case of an ordinary receivership. Difficult and perhaps complicated enquiry appeared likely. The court could appoint a master without violating Rule of Civil Procedure 53(b), 28 U.S.C.A. following section 723c. The reference was not general, but to "determine the amount of oil, if any, run from the McNeely lease, operated by the Trustee in Gregg County, Texas, to the respondents Johnston and Burnham * * * and the value thereof." Over a thousand pages of evidence were reported, which the judge personally examined, and he overruled the objections made to the report and adopted it in his final decree. We find no procedural error therein.

■ The appellants specify as error the master's refusal to consider, though he transmitted it in his report of the evidence, an affidavit of an expert witness, Weaver, that in his opinion certain oil tickets were not genuine. This action of the master is not complained of in the objections made to the report, nor does it appear that the judge ever ruled on it. If, however, he excluded the affidavit, there was no error. The witness was a local one who could have been subpoenaed. No other evidence was taken by affidavit. Such evidence may be received in summary proceedings, but the court is not bound to try them in that way. No reason at all appears why the witness could not have testified in person.

■ By an amendment of the answer laches and limitation were pleaded as a defense. These matters were not within the reference to the master, nor covered by his report. The report and the defense of limitation came before the judge, and briefs were filed. The judge informally referred the briefs to the master and asked his opinion on the law. Without any hearing, the master wrote a memorandum opinion on the Texas limitation law which he considered applicable. The judge adopted the opinion in its entirety on the law questions presented, and filed it, and shortly thereafter overruled the defenses of laches and limitation. This was an unusual procedure, but as it relates only to a matter of law, fully reviewable in this court, there is nothing to complain of. It is not as though evidence had been irregularly heard or fact questions reopened. It is now our duty to ascertain the applicable law.

■ We agree with the master that no limitation fixed by Section 11 of the Chandler Act, 52 Stat. 849, which became law Sept. 22, 1938, controls this case. See 1 Collier on Bankruptcy (14 Ed.) 1187. Section 11, sub. d of the Bankruptcy Act, 11 U.S.C.A. § 29, sub. d, as it stood prior thereto provided: "Suits shall not be brought by or against a trustee of a bankrupt estate subsequent to two years after the estate has been closed." We considered its application in Isaacs v. Neese, 5 Cir., 75 F.2d 566, but that was a "suit", brought by the trustee to recover property transferred before bankruptcy in fraud of creditors, and our decision was also rested on the conclusion that no bar had attached under the Texas statutes. In Stanolind Oil and Gas Co. v. Logan, 5 Cir., 92 F.2d 28, the bankruptcy trustee, on a reopening of the estate, sought by plenary bill to recover possession of certain oil leases previously in the court's possession and held under a

claim of right. We held Section 11 to apply only to causes of action existing before bankruptcy, and that there was no bar by laches. If the present summary petition is a "suit by the trustee" within the meaning of the quoted provision, no limitation ran under this Section because the estate has not been closed.

■ Since no federal limitation exists, the next question is whether a Texas statute of limitation applies. The possible question whether Congress intended Section 11 to supersede State limitation statutes except as it in its amended form recognizes them has not been raised. The two-year statute, Vernon's Texas Civil Statutes, Art. 5526, applying to "Actions for detaining the personal property of another, and for converting such property to one's own use" and "Actions for taking or carrying away the goods and chattels of another", does not control, for this is not an "action"; and is not based on title and does not seek damages, as has been before pointed out. Article 5529 bars after four years from the accrual of the right to bring the same, "every action other than for the recovery of real estate, for which no limitation is otherwise prescribed". This limitation is applied in Texas to rights of an equitable nature. See Isaacs v. Neese, supra. But as respects rights of action arising from actual fraud or fraudulently concealed, it is consistently held that the limitation begins to run only on discovery of the fraud, unless there was a failure in diligence to discover it earlier. Munson v. Hallowell, 26 Tex. 475, 84 Am.Dec. 582; Glenn v. Steele, Tex.Sup., 61 S.W.2d 810. In Port Arthur Rice Mill Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S.W. 926, the fraud was known but not the participation in it of the defendant. But if the fraud and the persons committing it are both known, want of ability to prove the extent of the full damages will not excuse failure to sue or prevent the running of limitation. Quinn v. Press, 135 Tex. 60, 140 S.W.2d 438, 128 A.L.R. 757; Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, 137 A.L.R. 263.

■ We assume the present case to be an "action" within the meaning of the statute, though we have been cited to no case in which a court has been held too late to reclaim property taken from it without color of right. Looking to the facts reported by the master, the situation was this: Burnham and Johnston had a plant to purify and reclaim waste oil a half mile from the lease here in question. In March, 1939, they promoted a corporation called Rose Gathering System. Capital was obtained in the East from persons who were to get their money back from operations and to have 49 percent of the stock, Burnham and Johnston having the other 51 percent. The latter were the officers of the corporation, and Burnham was its active manager. The corporation bought certain pipe lines already existing in the oil field through which oil was gathered from the wells and marketed. Burnham and Johnston's reclaimed oil was also marketed through these pipe lines. One pipe line ran across the lease in Todd's custody, and prior to Nov. 1, 1933, Todd as custodian had sold oil from his tanks through this pipe line. At that date he cut out his underground connection with Rose Gathering System's line, plugging the cut pipes, and thereafter sold to another pipe line. The tanks were in charge of one Wise, who lived on the lease. Wise secretly and without Todd's authority from time to time permitted oil to be diverted from the tanks into the Rose pipe line by removing the plugs and restoring the connection, and the oil was appropriated through Rose Gathering System by Burnham. In November of 1934, the by-pass was discovered by Todd, but Wise would tell nothing, and was discharged. Todd, while testifying, was asked if he did not then know that oil had been run to Johnston and Burnham, and said: "So far as getting anybody—I drilled Bill Wise until I was blue in the face, for quite awhile trying to get information out of him, and trying to catch him, and it was impossible to. Apparently these boys would not talk until after the criminal possibility was over with, and we had no way of getting any proof of any kind or character". Several years later, after criminal proceedings were barred, a detective obtained full information from Wise, and the present proceedings were filed soon after. The full evidence has not been brought to this court, appellants relying on a fragment of Todd's evidence to show he knew of the fraud in November, 1934, and was not diligent in finding out more. We do not know what else the judge may have found in the evidence to support his fact conclusions on this point. We are of opinion that it could be concluded fairly that Todd had only a suspicion that oil was being stolen, that he

could not tell by whom, nor whether it was much or little, and since not only theft but criminal violations of the oil proration laws were involved, the participants could not be forced to testify, Wise being the only known witness, and he refusing to talk. It is not evident that anything more could have been learned then. Only through Wise was the case made out at last. We are unable to say that the judge's finding that relief against this well concealed fraud was not barred under the Texas statute, or by laches, is incorrect.

 The correctness of the other fact findings is not attacked. It stands established that 50,699 barrels of oil were thus taken, of a value when taken of $1 per barrel. A recovery was given against G. H. Burnham and J. H. Johnston of $50,-699, with interest at 6% from date of judgment. But this judgment is averred to be unauthorized by the facts found. The master's finding is that "The oil so diverted was not run to the reclamation plant of Johnston and Burnham and there appropriated by them as a firm separate and apart from Rose Gathering System Corporation, as contended by plaintiff; but said Johnston and Burnham as the owners of 51 percent of the capital stock of said corporation acquired for their own use and benefit that proportion of interest in the oil that was appropriated by the Rose Gathering System Corporation as above noted". The corporation is not a party to this proceeding. Perhaps its affairs had been wound up before the petition was brought. Certainly stealing oil was not a proper part of the corporate business. We understand the master to mean that Burnham, being manager, sold the oil and he and Johnston got 51 percent of the proceeds. As tort-feasors all participants would be jointly and severally liable for the whole damages; but this is not a tort suit, it is an effort to trace assets wrongly taken from the custody of the court and compel their return. We believe each participant is answerable in equity only for the benefit he got. If Burnham and Johnston still had any oil, they might be imprisoned till they produce it. As all has been disposed of, they must return the value of their part. If the partnership got only 51 percent of the oil, the judgment against the partners ought to be for the value of that part only. Possibly interest should be added from the time of the taking, but since that question has not been argued we make no ruling

on it. It is argued that the evidence before the judge but not before us justified a conclusion that Burnham and Johnston got the benefit of all the oil. If so, the judge should not have approved the above-quoted finding of the master. We are compelled to set aside the decree as to amount only, but will permit a re-examination of all the evidence, and a consideration of the question of interest, in refixing the amount of reparation due by Burnham and Johnston.

Reversed and remanded solely for the further proceedings indicated.