In the Matter of Carroll R. DICKSON
and Ruth W. Dickson, Debtors.

Robert M. BURROUGHS, Trustee, et al.,
Debtors, Plaintiffs,

v.

LOCAL ACCEPTANCE COMPANY,
Defendant.

No. C–C–76–60.

United States District Court,
W. D. North Carolina,
Charlotte Division.

March 2, 1977.

As Amended April 4, 1977.

W. Donald Carroll, Jr., Helms, Mulliss & Johnston, Charlotte, N. C., for plaintiffs.

Ralph C. Clontz, Jr. and James H. Morton, Charlotte, N. C., for defendant.

## MEMORANDUM OF DECISION

McMILLAN, District Judge.

This is a Truth-in-Lending case. Carroll and Ruth Dickson borrowed money from defendant. Later they filed a wage-earner petition under Chapter XIII of the Bankruptcy Act. They are joined with the trustee as plaintiffs in this action.

This case was consolidated with *Burroughs v. Associates Financial Service Co.,* C–C–76–4, and on February 24, 1976, the court heard arguments from all counsel, and heard *evidence* in *Associates.* Subsequently, counsel for both sides in *Associates* submitted additional briefs, and counsel for Local Acceptance Company submitted an *amicus* brief.

A further hearing, on all pending motions, was scheduled for June 11, 1976, in *Local,* and on that day the court heard arguments for about three hours. The vast majority of this time was devoted to arguments from defense counsel.

The parties in *Local* have also filed briefs, exhibits, and affidavits, that are about six inches thick. The court has considered these materials, and the arguments of counsel, and has concluded that plaintiff Burroughs is entitled to summary judgment on some claims, defendant is entitled to summary judgment on others, and the Dicksons' complaint should be dismissed.

Before reaching the merits, several procedural matters must be dealt with. Defendant has moved to vacate two orders of the bankruptcy judge that (1) retained for the trustee the right to bring this action after confirmation of the plan, and (2) authorized the trustee to hire an attorney, and to prosecute an adversary proceeding against defendant. The orders were filed August 13, 1975. Defendant argues that these orders should be vacated because they were entered without notice to it.

■ First, the orders were unnecessary as the trustee does not need court approval to institute an action. Rule 13–607.

■ Second, the application for the orders was made in open court, at the first meeting of creditors, and defendant had notice of the meeting.

Third, in all events, the orders could probably have been validly entered *ex parte.* Rule 13–203.

This motion will be denied.

Defendant has also moved to dismiss the action as barred by the statute of limitation, and as brought by improper parties.

■ Title 15 U.S.C. § 1640(e) provides a one year limitation on actions under the Truth in Lending Act. This action was commenced after the statute had run. Title 11 U.S.C. § 29(e), however, gives a trustee two years after adjudication of bankruptcy to bring any action not barred at the time the bankruptcy petition was filed. Title 11 U.S.C. § 1002 makes § 29 applicable to Chapter XIII, and provides that, for Chapter XIII, date of adjudication should be read to mean date of filing the petition.

The action was not barred when the Dicksons filed their petition, and so the *trustee's* action is not barred.

■ There is no tolling provision for the *debtors,* however, and so their action *is* barred by the statute, and will be dismissed.

■ Finally, defendant argues that the one-year limitation is a condition precedent, not a statute of limitation, so that it is not tolled by § 29. The court has concluded otherwise. *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 556–59, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

Defendant also argues that the trustee, now the sole plaintiff in this action, is not a proper party plaintiff in a Truth-in-Lending suit. Defendant says that in a Chapter XIII proceeding a trustee deals only with future wages, not the debtor's property, so that the action against defendant, even if it is property under the Bankruptcy Act, does not vest in the trustee.

The trustee argues that 11 U.S.C. § 110(a)(5), and (6), give the trustee title to the debtor's property, including this action, and that § 110 is incorporated into Chapter XIII by 11 U.S.C. § 1002, unless § 110 is inconsistent with Chapter XIII. The trustee, of course, says there is no inconsistency.

■ I find it unnecessary to reach this question, because the August 13, 1975, confirmation order clearly contemplated that this action, which *is* property under

§ 110(a)(6), vest in the trustee, to pursue as part of the plan to pay off creditors. Defendant has cited no principle of law that makes this improper, and I find nothing in the language or purpose of Chapter XIII that is inconsistent with a plan that vests in the trustee the right to bring an action. Accordingly, the motion to dismiss the trustee's complaint will be denied.

## TRUTH–IN–LENDING CLAIMS

■ 1. Regulation Z, § 226.8(b)(5), requires that the loan disclosure statement describe the type of security interest, if any, the creditor is taking, clearly describe the property it attaches to, and clearly set forth the fact that after acquired property is covered by the agreement, if it is. The disclosure, a copy of which is attached, which defendant gave to plaintiffs claims an interest in "[a]ll of the household goods now located in or about borrowers' residence at their address above set forth." It goes on to describe, without limiting, what types of goods are included.

Plaintiff argues this is an insufficient description of the property, because it does not describe in detail each particular item of property the borrowers actually owned.

I find, on the contrary, that the description is clear and adequate. No purpose would be served by the disclosure plaintiff says should be made, and the regulation does not require it. *Slatter v. Aetna Finance Co.*, 377 F.Supp. 806 (N.D.Ga.1974), *rev'd* on other grounds 526 F.2d 642 (5th Cir. 1976); *Gibson v. Family Finance Corp.*, 404 F.Supp. 896 (E.D.La.1975) (dicta).

■ The disclosure statement describes the security interest, and includes the statement "[s]uch security interest also relates to the extent permitted by law, to after-acquired property."

North Carolina General Statutes § 25–9–204(4)(b) only allows a security interest to attach to after-acquired property, other than accessions, for ten days after the loan. Plaintiff says the disclosure should have included information to this effect.

Exhibit E to "What you Ought to Know About Federal Reserve Regulation Z," published by the Federal Reserve Board, is a model disclosure statement, published as a "demonstration" of "how a creditor may comply with the disclosure requirements" of the section of Regulation Z at issue here. It contains less information about after-acquired property than defendant's form.

Title 15 U.S.C. § 1640(f) provides that good faith reliance on an interpretation of the statute or regulation by the Board is a defense to an action under the Act. This seems to cover defendant in this instance.

■ Moreover, Regulation Z requires disclosure of facts. It does not require the lender to write a legal treatise for the borrower. I find no violation of the regulation for failure to disclose the ten-day limit.

■ 2. Section 226.8(b)(7) requires disclosure of the method of computing any unearned portion of the finance charge, in the event of repayment. Plaintiff says this section was violated because defendant failed to describe how any unearned portion of the credit life insurance premiums the Dicksons paid, would be refunded.

This argument presupposes, however, that the premiums should have been treated as part of the finance charge. As discussed below in part 5, this is an erroneous assumption, and defendant is entitled to prevail on this claim.

3. Section 226.8(b)(4) requires disclosure of the method of computation of any charge for late payment or default. Plaintiff says defendant violated this regulation by:

(a) Failing to disclose that defendant could accelerate the debt on default.

(b) Failing to disclose that late payments would result in imposition of charges of interest at the contract rate of 21.72% on the unpaid balance due.

(c) Failing to disclose that if the final payment were late, interest would accrue at 6%, instead of 21.72%.

It is undisputed that the disclosures were not made.

I find that (a) and (c) are not violations of the regulation, but that (b) is a violation:

(a) The loan disclosure statement does not include a statement that the debt may be accelerated for late payment. No fees were to be exacted if the lender chose to accelerate the note. The question is whether pure acceleration is a "charge." *Garza v. Chicago Health Clubs, Inc.*, 347 F.Supp. 955 (N.D.Ill.1972), e. g., so held. The reason given for this mangling of the language is that it furthers the purposes of Congress, by allowing borrowers to make more rational selections from money lenders. This court has trouble stretching the language of the regulations and statute this far, to help Congress and the Federal Reserve, which publishes the regulations, do what they plainly did *not* do. Finally, *Johnson v. McCrackin-Sturman Ford*, 527 F.2d 257 (3rd Cir., 1975), holds that an acceleration clause is *not* covered by this regulation.

(b) The disclosure statement does not tell the borrower that interest will run on any given *late payment* at the rate of 21.72%. Defendant says this is not a penalty because that was the stated interest rate; this was an interest bearing note; and any one would know he has to pay more interest if he holds the money longer. The problem with defendant's argument is that the finance charge was computed on the assumption that all payments would be timely made. This being so (absent disclosure of what defendant says is obvious), the disclosure statement leaves the erroneous overall impression that the finance charge stated is *the* finance charge that will be paid; it does not disclose that even a default of one day will add a charge to the total finance charge at the rate of 21.72%. Without disclosure of this charge, the purpose of the Act, to allow easy comparison of credit, is thwarted. This failure to disclose violated § 226.8(b)(4).

(c) The disclosure statement did not tell the borrower that interest would run at 6% after maturity. That is, if plaintiffs made their *last* payment late, interest would accrue at 6%, after maturity, on the unpaid balance. Plaintiffs say this is a late charge that must be disclosed. The problem with this argument is that charging interest at 6% after maturity, on *this* loan, turns out to be a bonus, not a penalty. The true rate during the term of the note was in excess of 21%. Therefore, the disclosure would be a disclosure, not of a *penalty*, but of a bonus, and only penalties need be disclosed.

4. Section 226.8(d)(3) requires disclosure of each *component* of a finance charge imposed.

This loan was, in part, used to refinance an old loan. The old loan was a precomputed interest loan. As a consequence, defendant rebated the unearned interest from the old loan, to the Dicksons. It did *not* include old unearned interest in the new finance charge, nor did it include it in the new amount financed.

Plaintiff complains that the loan disclosure statement did not tell the Dicksons how the old loan was refinanced. Plaintiff is correct in his factual assertion.

But plaintiff is unable to point to any section of the regulation or statute violated by this omission, and the court has found none. Certainly § 226.8(d)(3) did not require it, because the refinancing had no

effect on the finance charge. Defendant simply violated no law by the omission.

5. Plaintiff also claims a violation of Section (d)(3) because defendant failed to include credit insurance premiums in the finance charge, and then break the finance charge down.

Section 226.4(a)(5) explains which premiums have to be included. Premiums do *not* have to be included if:

A. The coverage is not required by the creditor.

B. This fact is disclosed to the borrower in writing.

C. The borrower is given a written disclosure of the cost of the insurance.

D. Then the borrower separately signs a specifically dated written indication of his desire for the coverage.

The Dicksons were told, in writing, that the insurance was not required; they were given a written disclosure of the cost, and did separately sign a dated request for coverage.

The only remaining question is whether the insurance *was not* required. This, of course, is not conclusively established by the statement on the disclosure that it was not required, though this is some evidence of that fact, and *Doggett v. Ritter Finance Co.*, 528 F.2d 860 (4th Cir. 1975), does not compel a different conclusion.

Nevertheless, plaintiff has not alleged that insurance was required, nor has he offered any evidence that it was. Therefore, the only evidence is defendant's unrebutted written assertion that it was not required.

Plaintiff nevertheless argues that defendant is not entitled to come within this section, because defendant got a rebate from the insurer of about 25% of the premium, and because the premium was excessive. These facts, plaintiff argues, made the premium or part of it, a hidden finance charge.

The trouble with this argument is that the *regulation* rather than plaintiff's view of what should be disclosed, is the measure of what constitutes a finance charge, and the regulation, on the facts before the court, does not require this disclosure.

6. Section 226.8(d)(1) requires an itemization of all components of the amount financed. Plaintiff complains that insurance premiums and a $1.00 filing fee were included in the amount financed, and although this fact was disclosed, it was not done meaningfully.

The court has examined the disclosure statement, and finds that it complies with the regulation.

7. Plaintiff complains that defendant's loan disclosure statement violates Section 226.8(d)(3) because it fails to disclose "a description of each amount included" in the finance charge. The "finance charge" of $554.52 is shown clearly labeled in a box at the upper left of the statement. Although it does not say so, the parties agree that it actually includes nothing except interest. Plaintiff says that Regulation Z requires a clear statement of exactly what "finance charge" includes in all cases, even a case like this one, where its only element is pure interest. Defendant says that since nothing but interest is included in the finance charge, the law is fully complied with. Defendant also cites an official interpretative ruling by the Federal Reserve Board of December 1, 1975, in support of its position.

The Federal Reserve Board ruling is not controlling under Section 1640(f) of the Act, because it was issued after the transaction under consideration here. Though entitled to substantial weight, it does not determine the issue. To the contrary, I am persuaded by the opinion of the

court in *Johnson v. Associates Finance, Inc.*, 369 F.Supp. 1121 (S.D.Ill.1974), which at page 1122 reasoned as follows:

> "Though the defendant's argument may seem reasonable on its face, it actually represents an attack on the basic scheme of disclosure fundamental to Regulation Z. The term 'finance charge' is highly ambiguous and a borrower can hardly be expected to know whether it denotes one type of charge or embraces a whole host of fees. The lender does know. Section 226.8(d)(3) amounts to a recognition of this difficulty and prescribes a sensible and uniform way to resolve the disparity of information—i. e., it requires the lender in all cases to disclose individually the existence and amount of each component part or parts of the finance charge. The defendant herein failed to comply with that requirement and is therefore liable under the Act."

■ 8. Plaintiff says Section 226.-4(a)(5) was violated because defendant failed to disclose the term of the credit insurance. He argues that if the term is shorter than the life of the loan, then to come within the exception to Section (a)(5) and not be required to include the premium in the finance charge, defendant must disclose this fact, as part of the disclosure of "cost" required by that subsection. Plaintiff's theory has some support in Federal Reserve Board Interpretation § 226.402. However, the evidence discloses that the term of the insurance matched the term of the loan, and so no disclosure was required. *Philbeck v. Timmers Chevrolet Co.*, 499 F.2d 971 (5th Cir. 1974).

■ 9. Section 226.6(a) requires that all disclosures be made in a meaningful sequence. Plaintiff says defendant violated this section. The form is not a model, but I believe it is better in most respects than the Board's own form, Exhibit E, and I find no violation of this section.

## BONA FIDE ERROR DEFENSE

■ Title 15 U.S.C. § 1640(c) provides that a creditor has a defense to a Truth-in-Lending action if he shows that the violation was unintentional, and resulted from a bona fide error. Defendant says any disclosure violations come within this provision, because it tried real hard to do right.

The bona fide error defense is not applicable to these violations. It is designed to provide a defense to *transactional* errors, such as clerical mistakes, not to mistakes in *judgment* after careful consideration of the law. *Johnson v. Associates Finance Co.*, *supra*; *Buford v. American Finance Co.*, 333 F.Supp. 1243 (N.D.Ga.1971); *Ratner v. Chemical Bank New York Trust Co.*, 329 F.Supp. 270 (S.D.N.Y.1971).

## NORTH CAROLINA CLAIMS

■ 1. Defendant is a subsidiary of a bank holding company. As a result, it is subject to the Bank Holding Company Act, 12 U.S.C. § 1841 *et seq.*, and Regulation Y, 12 C.F.R. § 225.1 *et seq.* Section 225.4(a)(9) gives bank holding companies, themselves or through their subsidiaries, the authority to sell credit life insurance. In amending Regulation Y to extend this authority, the Federal Reserve Board expressed the expectation that any bank holding company or subsidiary that extends credit insurance pursuant to this authority will exercise a fiduciary responsibility to the purchaser. 36 Fed. Register 15526 (8/17/71). Thus, defendant may fairly be considered a fiduciary of plaintiff for the purposes of the sale of credit life insurance in question.

The evidence discloses that defendant charged the Dicksons a premium roughly twice as high as a premium considered adequate by the North Carolina Insurance

Commissioner, and received a 25% rebate as a commission.

■ North Carolina General Statutes § 53–180(g) prohibits unfair and deceptive trade practices in the conduct of defendant's business. The court concludes that selling credit insurance at inflated premiums, receiving a 25% commission, and failing to disclose these facts, while in a fiduciary relationship with the borrower, constitutes an unfair and deceptive trade practice within the meaning of the statute.

■ 2. North Carolina General Statutes § 53–174 requires a lender to refund the total unearned interest and charges any time a loan is prepaid.

The evidence is undisputed that when the old loan was refinanced, the Dicksons were short-changed by almost $100 when unearned charges were refunded.

Defendant has filed affidavits [Documents 14 and 15] that tend to show that this was an honest mistake which resulted from transposing the numbers in a date. Defendant argues that it should not forfeit interest and principal under Section 53–166, because of the exception to that statute for bona fide errors.

I agree.

## CONCLUSIONS OF LAW

Defendant is liable to the plaintiff under both the Truth In Lending Act and the North Carolina Banking Act, specifically G.S. § 53–180(g). Plaintiff is entitled to recover interest and principal already paid as the result of violations of G.S. § 53–180. Plaintiff is also entitled to recover the sum of $1,000.00 plus reasonable attorneys' fees under 15 U.S.C. § 1640(a)(2), for violations of the federal Truth In Lending Act. Plaintiff is also entitled to recover his costs.

## ORDER

IT IS THEREFORE ORDERED:

1. That defendant's motion to vacate the orders of the bankruptcy judge is denied.

2. That defendant's motion to dismiss the complaint of plaintiffs Carroll and Ruth Dickson against the defendant Local Acceptance Company is allowed.

3. That plaintiff Burroughs, trustee, recover of the defendant the sum of $1,000.00, plus reasonable attorneys' fees, under the federal Truth-In-Lending claims held above to be valid, and that the plaintiff Burroughs recover under North Carolina law all interest and principal already paid to Local Acceptance Company.

4. That plaintiff Burroughs recover his costs.

5. If the parties can agree upon a judgment based upon the foregoing decisions, they are directed to submit such a judgment by March 15, 1977. If they can not so agree, plaintiff is directed to tender an appropriate judgment with citations to the evidence upon which detail of the judgment may be based.

[See Exhibit "A" on the following page]

## EXHIBIT "A"

CREDITOR
# LOCAL FINANCE COMPANY
LOCAL ACCEPTANCE COMPANY

PHONE:

### DISCLOSURE OF INFORMATION
as prescribed by
The Federal Consumer Credit Protection Act
And Regulation Z issued thereunder.

| | | | |
|---|---|---|---|
| Single Credit Life Ins. $ **\$2.39** | NUMBER 0189 | NAME & ADDRESS OF BORROWER(S) | FINAL PAYMENT **1500.00** EQUAL |
| Joint Credit Life Ins. $ —0— | | Carroll R. & Ruth DICKSON | IN ANY CASE X UNPAID PRINCIPAL |
| Credit Dis. Insurance $ 59.92 | DUE DATE 1st. 45 | 3730 N. Sharon Amity Road D7 Charlotte, N. C.          28205 | AND INTEREST |

| | DATE OF LOAN | FACE AMOUNT OF NOTE | NO OF MONTHLY PAYMENTS | AMOUNT OF MONTHLY PAYMENT | FIRST PAYMENT DUE DATE | FINAL PAYMENT DATE | |
|---|---|---|---|---|---|---|---|
| Non-Filing Ins. $ —?— | 6/19/74 | $ 1500.00 | 36 | $ 57.07 | 8/1/74 | 7/1/77 | |
| Filing Fees $ 2.00 | ANNUAL PERCENTAGE RATE | | | | | 5/L 71 | |
| Amount Financed* $ 1500.00 | | | | | | | |
| **FINANCE CHARGE** $ 554.52 | 21.72 % | 6-19-74 | | | | 1500.00 | |
| Total of Payments $ 2054.52 | | *Amount Financed includes any charges for insurance documentary stamps and filing fees shown above. | | | | | |

### Identification of Security Interest

An "X" in one or more of the boxes shown below means that the property so indicated, and the proceeds thereof, is subject to a security interest created by a Security Agreement identified by the date shown hereon to secure the payment of this loan and future loans of the creditor to the borrowers made within five years from the date of such Security Agreement. Such security interest also relates to the extent permitted by law, to after-acquired property

### Identification of Property to Which Security Interest Relates

[X] All of the household goods now located in or about borrower's residence at their address above set forth.

Without limiting the generality of the foregoing, meaning and intending and hereby including all furniture, radios, record players, television sets, freezers, refrigerators, dish washers, ranges, sewing machines, vacuum cleaners, washing machines, clothes dryers, ironers, air conditioners, power mowers, power tools, carpets, rugs, books, clocks, linens, china, crockery, appliances, cutlery, utensils, silverware, and musical instruments now at said premises and any household goods hereafter acquired by borrowers

[X] The following described motor vehicle(s):

| MAKE | YEAR MODEL | BODY TYPE | SERIAL NUMBER | OTHER IDENTIFICATION |
|---|---|---|---|---|
| XXX Vega | 1971 | CP | 141771U292828 | |
| | | | | |

together with all the equipment of every kind now on said automobile or which may be hereafter attached, and all replacements made by the borrowers

[NONE] Other property as follows:

If there is only one borrower, plural words shall be construed in the singular whenever the context so requires

### CREDIT LIFE AND DISABILITY INSURANCE

The cost of credit life insurance and credit disability insurance, if obtained through the creditor, is shown above. Credit life insurance and credit disability insurance is not required by the creditor and is not a factor in the approval by the creditor of this loan.

[ ] We want Joint Credit Life Insurance

[✓] I want Single Credit Life Insurance

[ ] I/We do not want Credit Life Insurance

[✓] I want Credit Disability Insurance

[ ] I do not want Credit Disability Insurance

I/We understand that if Single Credit Life Insurance and/or Credit Disability Insurance are selected, such insurance will be on the borrower signing on the first line below.

*Carroll R. Dickson*
(Signature)

Date 6-19, 19 74
(Signature)

THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF A COPY OF THE ABOVE DISCLOSURE STATEMENT, AND THAT THE ABOVE INSURANCE OPTIONS WERE CHECKED, SIGNED, AND DATED, BEFORE THE NOTE OR OTHER PAPERS EXECUTED IN CONNECTION WITH THIS LOAN WERE SIGNED.

*Robert L. Martin*
(Witness)

*Carroll R. Dickson*
(Signature of Borrower)

6-19                    19 74

FEDERAL DISCLOSURE STATEMENT— OFFICE COPY