In re H. Roger LAWLER, et al., Debtors.

H. Roger LAWLER, Plaintiff,

v.

REPUBLICBANK DALLAS, Individually and as Trustee, Defendant.

Bankruptcy No. BK 3–76–346–F.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

June 26, 1985.

C. Thomas Wesner, Jr., Dallas, Tex., for debtor.

Spikes Kangerga, Thompson & Knight, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

### I. Procedural Background

On January 9, 1976, an involuntary petition in bankruptcy was filed against H. Roger Lawler (hereinafter "Debtor") in the District of Nevada. The case was transferred to the Northern District of Texas on June 6, 1976 and on January 20, 1978, Debtor consented to an adjudication of bankruptcy. This adversary proceeding was filed by Debtor on December 13, 1983, alleging that Defendant had improperly accelerated a debt owed to RepublicBank Dallas (hereinafter "Defendant"), and that Defendant foreclosed upon and sold a certain tract of land securing said debt, all in violation of the automatic stay. Defendant answered and denied that said land was property of the estate, and further alleged that Debtor's complaint was barred by limitations. On September 14, 1984, Defendant filed its Motion for Summary Judgment, setting forth argument and authority to support its position. On December 19, 1984, Debtor sought, and on January 6, 1985 received, leave of court to amend his original complaint. In the Amended Complaint, filed on December 19, 1985, Debtor included allegations concerning points addressed by Defendant's Motion. In addition, Debtor filed a response to said Motion and filed his own motion for summary judgment. Defendant responded by pleadings filed on January 2, 1985. On that date, this Court heard argument of counsel on the cross motions for summary judgment, and on January 25, 1985 granted Defendant's motion. An order to this effect was entered on February 4, 1985, and Debtor filed his notice of appeal on February 12, 1985.

### II. Factual Background

As might be expected, given the long, torturous course of these bankruptcy proceedings, the facts before this Court were, to be charitable, somewhat convoluted. It appears that on November 22, 1972, William Lawler ("William"), a sibling of the Debtor, obtained financing from or through the Defendant for the purchase of a certain parcel of land in Collin County, Texas. William executed a promissory note with a vendor's lien, secured by a deed of trust, in favor of Defendant. On the same day, William conveyed an undivided half interest to Debtor, in return for Debtor's promise to satisfy one-half of the indebtedness. Title was thus in the names of William and H. Roger Lawler as co-tenants. As Defendant has mentioned in its answer and motion, and as Debtor somehow failed to mention in his initial and amended complaints, the story does not end here. On April 15, 1975, approximately nine months before the involuntary petition was filed against Debtor in the District of Nevada, Debtor conveyed his interest in the Collin County, Texas property to Lawler Corporation. On the same date, the property was conveyed by the Lawler Corporation to George G. Nicholdaze, Trustee of the Lawler Family Trusts. As of the date of the involuntary petition, therefore, title to the property was in the names of William Lawler and the Trustee for the Lawler Family Trusts.

On November 22, 1975, two months prior to the filing of the involuntary petition, William Lawler defaulted on the obligation owed to Defendant. On May 2, 1976, the Defendant, located in Dallas, Texas, accelerated the note, secured by property located in Collin County, Texas. On July 6, 1976, the Defendant posted the property for sale pursuant to the terms of the deed of trust. On August 3, 1976, the property

was sold at trustee's sale in Collin County, Texas.

It is Debtor's contention that the sale conducted at Defendant's behest on August 3, 1976 constituted a violation of the automatic stay. Debtor's conclusion is based upon three premises. First, Debtor asserts that Defendant was aware of his interest in the subject property at the time of sale, notwithstanding the state of title in August, 1976. Second, Debtor asserts that, by virtue of an exception to Section 21(g) of the Bankruptcy Act, by which this case is governed, Debtor was not required to file notice of the pending bankruptcy case in the real property records of Collin County, because the case had been transferred to the Northern District of Texas, and more specifically, Dallas, and Defendant's offices are located in Dallas County.[1] Finally, Debtor points to a decree entered by Judge Dean Gandy, the predecessor judge in these proceedings, declaring the Lawler Family Trusts the alter ego of Debtor for all purposes, retroactive to their inception.[2] In response, Defendant points to the state of title at the time of acceleration and foreclosure, and states that it could not possibly have surmised that Debtor retained an interest in the land. Defendant also claims status as a bona fide purchaser, in that Debtor failed to file the proper notices in Collin County and that Section 21(g) of the Bankruptcy Act excused such failure only if the bankruptcy proceedings were conducted in the same county as the property. Here, of course, the land was in Collin County while all records of the bankruptcy proceedings were maintained in the federal courthouse in Dallas County. Finally, Defendant cites the limitations period set forth in Bankruptcy Act Section 11(e) as an absolute bar to an action brought on behalf of the estate.

### III. Conclusions of Law

### A. Alter Egocentricity and Property of the Estate

Debtor asserts, as he has in several similar cases before this Court, that the entities holding legal title to the property in question are or were mere alter egos of himself, and therefore any actions taken by creditors with respect to such property constituted violations of the automatic stay, and were accordingly void ab initio. In the case at bar, Debtor's argument is stronger than that usually encountered in these extensive proceedings [3] by virtue of a decree entered in 1979, some three years after the foreclosures at issue here, declaring the Lawler Family Trusts to have been Debtor's alter egos since their inception. Leaving aside for the moment the inequities of according such a decree retroactive effect, it is clear that, should Debtor's argument be accepted, Debtor could conceivably avoid any business transaction or conveyance to which the trusts may have been a party since the date the involuntary petition was filed.

This Court has on several occasions encountered Debtor's attempt to pierce his own veil. Aside from this case, in which it appears with noticeable frequency, this argument has not often been presented. As far as this Court can determine, such an argument has never met with success. In *In re Balducci Oil Company, Inc.*, 33 B.R. 847 (Bkrtcy.D.Colo.1983), the debtor was a subsidiary against whom a creditor had asserted a claim. The debtor attempted to set off this debt against an unrelated obligation owed by the same creditor to the debtor's sister subsidiary. To sidestep the generally recognized proscription against

---

1. This Court did not receive the order transferring the case from the District of Nevada until June 6, 1976. Notice of the pending bankruptcy proceeding was not filed in the real property records of Collin County until March 10, 1977, more than seven months after the foreclosure and sale of which Debtor complains.

2. This order, entitled "Order Declaring Alter Ego", was signed by Judge Gandy on June 18, 1979, nearly three years after the sale of which Debtor complains.

3. At the risk of creating a pun, this Court would go so far as to describe these proceedings as a virtual marathon.

such efforts,[4] the debtor attempted to pierce its own corporate veil to establish that the sister subsidiary was merely the alter ego of the debtor. Citing Colorado case law holding that the corporate veil will be pierced only upon a showing of fraud or some other wrong against innocent third parties, the court determined that

> ....a corporate officer may not pierce the corporate veil at his whim or caprice or to perpetrate a fraud ... (Debtor) has cited no case where a court allowed a corporation to pierce its own veil or the veil of a subsidiary to achieve desired ends. Thus, as a matter of corporate law, without alleging fraud or some other wrong, (Debtor) will not be allowed to disregard (its sister subsidiary's) corporateness to establish mutuality of obligation.

33 B.R. at 853. This Court notes that the Texas cases are virtually identical to the Colorado holdings cited in *Balducci* with respect to the circumstances under which disregard of the corporate form is justified. *See, e.q., Paine v. Carter*, 469 S.W.2d 822, 827 (Tex.Civ.App.-Houston (14th Dist.) 1971, writ ref'd n.r.e.) ("in order for the doctrine of alter ego to apply, there must be an attempted use of a corporate vehicle in a fraudulent manner or in a manner which would ordinarily defraud an unsuspecting or good faith third party"); *Bell Oil & Gas Company v. Allied Chemical Corporation*, 431 S.W.2d 336 (Tex.1968); *Goetz v. Goetz*, 567 S.W.2d 892 (Tex.Civ. App.-Dallas 1978, no writ); *King v. Tubb*, 551 S.W.2d 436 (Tex.Civ.App.-Corpus Christi 1977, no writ). Consequently, this Court finds no justification under Texas law to permit Debtor to use the alter ego doctrine to achieve his own desires. The philosophy underlying *Balducci*, i.e., that the alter ego doctrine should be considered a sword for creditors rather than a shield for debtors, applies with equal force in the instant case.

In the case at bar, Defendant foreclosed its lien and caused the Collin County property to be sold in August, 1976. The involuntary proceeding was filed in Nevada in January, 1976. There is nothing in the pleadings, affidavits, or discovery on file, other than Debtor's bare assertions, to indicate that Defendant had any notice, constructive or actual, of the pending bankruptcy at the time of the sale. By contrast, in *In re Loughnane*, 28 B.R. 940 (Bkrtcy. D.Colo.1983), the debtor, an individual, actually sent notice to the creditor, in this case the Internal Revenue Service, of the entry of an order for relief as to the debtor individually. The Internal Revenue Service nonetheless assessed a deficiency against the debtor's wholly owned corporation and levied on that corporation's bank account. The debtor asserted that the corporation's assets were actually property of his estate in bankruptcy, and that the action taken by the Internal Revenue Service against corporate assets amounted to a violation of the automatic stay. In support of his contentions, the debtor attempted to pierce the veil of his own corporation, creating a situation not unlike that faced by this Court. Again relying on Colorado law, the *Loughnane* court held that "the corporate veil cannot be pierced at the whim and caprice of corporate officers." 28 B.R. at 942. Citing *In re Don/Mark Partnership*, 14 B.R. 830 (D.Colo.1981), the court ruled that "the technical, legal distinctions between individuals, partnerships, and corporations will be respected and applied with reference to the automatic stays of actions against property of the estate." *Id.* So, too, in the present case, must such distinctions be recognized and respected. From the Debtor's perspective, the trusts were, at the time of the sale, completely separate legal entities. Defendant, as a creditor of those entities, relied upon the distinction in pursuing its remedy. To permit Debtor to use a decree entered three years after the facts at issue here, at the request of the trustee and for the benefit of creditors, to frustrate what was, at that time, a legitimate foreclosure of a lien against property of a nondebtor entity, would be a travesty. "Persons who create a corporation in order to enjoy the advantages flowing from its

4. *See, e.q., Depositors Trust Company v. Frati Enterprises*, 590 F.2d 377 (1st Cir.1979).

existence as a separate entity are not entitled to have the corporate entity disregarded in situations where it works to their apparent disadvantage". *In re A.V. Jellen*, 521 F.Supp. 251, 253 (W.D.Va.1981). Although the entities involved in this case are trusts, rather than corporations, this Court perceives no reason why the same principles should not apply. Debtor caused the trusts to be created as separate legal entities, presumably to capitalize on some benefit expected to flow therefrom. Debtor did not discourage third parties from dealing with the trusts as separate entities, and those third parties relied upon the separate existence of those entities in pursuing their remedies upon default.

> (T)he corporate form will be disregarded when not to do so would work an injustice upon innocent third parties. Here, innocent third parties dealt with each individual corporation in reliance upon, rather than in ignorance of, the distinctive corporate entity of each. Here, therefore, to disregard those distinctive corporate identities would work the very injustice the principle is intended to avoid.

*Fidelity & Deposit Company of Maryland v. USAFORM Hail Pool, Inc.*, 523 F.2d 744, 758 (5th Cir.1975), *cert. den.* 425 U.S. 950, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976). By his argument, Debtor seeks to use the alter ego doctrine not to prevent injustice to third parties but to effectuate it. Such an effort is inherently improper. *USAFORM Hail Pool, supra.* This Court simply cannot endorse or accept this attempted convolution of an equitable doctrine. For purposes of Defendant's Motion for Summary Judgment, therefore, this Court refuses to apply the 1979 decree of alter ego retroactively, and holds that the property at issue here was not at the time of the sale, property of the estate. Consequently, the sale was not held in violation of the automatic stay and is, for purposes of Debtor's claim, a valid sale.

B. *Sleeping on One's Rights Leaves One with a Backache and No Remedy*

■ As Debtor's complaint has made clear, and as Defendant swiftly pointed out, the sale of which Debtor complains took place in August 1976, yet Debtor failed to bring this action until December, 1983, more than seven years after the sale and nearly six years after Debtor consented to an adjudication of bankruptcy. In its Motion for Summary Judgment, Defendant contends that this action is absolutely precluded by the limitations period of Bankruptcy Act Section 11(e), which states, in pertinent part,

> A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired *at the time of the filing of the petition* in bankruptcy. (emphasis added).

Debtor has focused upon the emphasized portion of Section 11(e) as the basis for his assertion that the limitations period set forth therein does not apply to a cause of action arising after the bankruptcy petition is filed. As authority for this conclusion, Debtor cites *Burnham v. Todd*, 139 F.2d 338 (5th Cir.1943). This Court notes, however, that the passage to which Debtor refers is a construction of Section 11(d), which, prior to the 1938 amendments, stated "(s)uits shall not be brought by or against a trustee of a bankrupt estate subsequent to two years after the estate has been closed." As the Fifth Circuit stated in *Burnham*, "We agree with the master that no limitation fixed by Section 11 of the Chandler Act, 52 Stat. 849, which became law September 22, 1938, controls this case." 139 F.2d at 342, referring to Section 11(e). This is not an altogether surprising conclusion, as the bankruptcy proceedings in *Burnham* had been commenced in 1933, or approximately five years before Section 11(e) took effect. For the Fifth Circuit to have applied Section 11(e) would have required retroactive application of the statute. It appears from the text of that opinion that the Fifth Circuit

was unwilling to give § 11(e) such a construction, and therefore resorted to § 11(d) as it read at the time the bankruptcy petition was filed.

The underlying purpose of Section 11(e) was clearly to give the trustee some breathing room, unless the applicable limitations period had expired prior to the filing of a bankruptcy petition. Congress clearly did not intend to resurrect a corpse, but did intend to allow a trustee the opportunity to resuscitate a viable claim for the benefit of the estate.

> (T)he weight of authority, based not only on the language of Section 11(e) but also on the Judiciary Committee's report and statement concerning its purpose, is to the effect that its object was to give the trustee or receiver a minimum two-year period in which to sue notwithstanding earlier expiration of other limitation provisions ... (however) (w)here an action by the trustee is commenced neither within the two year period after the adjudication nor within the time prescribed by applicable state limitation provisions, it is obviously proscribed, except where the right of action is founded upon belated discovery of the fraud upon which it is based.

5A Remington on Bankruptcy 48 (5th Ed. 1953). This interpretation is entirely consistent with the Supreme Court's ruling in *Herget v. Central National Bank & Trust Company*, 324 U.S. 4, 65 S.Ct. 505, 89 L.Ed. 656 (1945), wherein it is stated,

> Section 11(e) is not limited by its words to actions inherited by the trustee; nor does it discriminate against actions by the trustee accruing to him under the Act. It provides simply that the trustee must bring action on any claim in behalf of the estate within two years subsequent to the date of adjudication or within such further time as the federal or state law permits, provided that such law did not bar the action on the date when the petition was filed.

324 U.S. at 8, 65 S.Ct. at 507. This Court therefore must analyze Debtor's claim according to the following sequence. First, was the action barred by limitations prior to the date of adjudication? Second, was the action brought within the two year period set forth in Section 11(e)? Third, if appropriate, was the action commenced within a longer nonbankruptcy period? Debtor has apparently chosen not to address these points, seemingly content simply to say that Section 11(e) does not apply. Having determined, under the rule of *Herget* and progeny [5] that Section 11(e) does govern this action, it remains for this Court to test Defendant's Motion for Summary Judgment in light of the foregoing criteria.

The first criterion obviously poses no difficulty for Debtor. The involuntary petition was filed in January, 1976, and the foreclosure occured in August, 1976. Because the cause of action did not arise until after the petition had been filed, the nonbankruptcy limitations period cannot have expired as of the date of the petition. On the other hand, Section 11(e) is phrased in terms of the date of adjudication, rather than the date a petition is filed. In the case at bar, Debtor did not consent to an adjudication until January, 1978, roughly eighteen months after the cause of action arose. In any event, for purposes of this motion for summary judgment, this Court concludes that the cause of action remained viable as of January, 1978, as no argument to the contrary has been presented.

The second criterion presents a significant hurdle for Debtor. He filed this adversary proceeding on December 13, 1983. Even assuming, to give Debtor the benefit of this Court's fond regard for this case, that the date from which the Section 11(e) period is to be measured is January, 1978, it is obvious that Debtor waited nearly six years to bring this action. Under *Herget*, Debtor can find no solace in the two year breathing period provided by Section 11(e). If Debtor is to prevail against Defendant's motion for summary judgment, he must do so on the basis of some more generous period provided by nonbankruptcy law.

---

5. *See, e.g., Feldman v. First National City Bank,* 511 F.2d 460, 461 (2d Cir.1975).

■ It is at this point that a curious, but pertinent, trend in the case law becomes important. Section 11(e) is phrased in terms of the *trustee's* ability to bring an action within the longer of two years from the date of adjudication or the expiration of a limitations period provided by nonbankruptcy law. Here, however, the trustee declined to bring the action, and Debtor is prosecuting the case on his own behalf. In *Matter of Dickson,* 432 F.Supp. 752 (W.D. N.C.1977), the debtor asserted a right of action against a lender resulting from certain Truth in Lending violations that had allegedly been committed prior to bankruptcy. Because the alleged infractions occured within one year of the bankruptcy petition, and because the Truth in Lending Act contemplates a one year statute of limitations [6], the court determined that the *trustee* in bankruptcy could avail himself of the two year extension provided by Section 11(e) of the Bankruptcy Act. As to the *debtor's* rights to bring the action after the expiration of the one year period, however, the court found that no such extension applied. "The action was not barred when the (debtors) filed their petition, and so the *trustee's* action is not barred. There is no tolling provision for the *debtors,* however, and so their action *is* barred by statute, and will be dismissed." (emphasis original). 432 F.Supp. at 756. *Cf. In re Craig,* 7 B.R. 864, 866 (Bkrtcy.E.D.Tenn. 1980) ("Section 108, like Section 11(e), does not expressly extend the time within which debtors may bring suits not barred at the time of filing. It appears Section 108 was not meant to extend the time for debtors."); *Costello v. Pan American World Airways, Inc.,* 295 F.Supp. 1384, 1390 (S.D.N.Y. 1969). Accordingly, this Court must measure from the date the cause of action arose, i.e. August 3, 1976, rather than from the date of adjudication, to determine whether this action brought by Debtor, rather than the trustee, is barred by limitations.

■ Neither party has cited to this Court a relevant nonbankruptcy limitations period. It is difficult to ascertain from Debtor's pleadings whether he wishes to characterize this action as one in equity, i.e., to compel turnover of the property, or as one for trespass to try title. The distinction could be critical, as the latter is governed by a substantially longer limitations period. The Court notes that in his Amended Complaint, Debtor alleges that Defendant foreclosed upon the property in violation of the automatic stay. First Amended Original Complaint at page 4 ("Said wrongful foreclosure violated the automatic stay and was null and void."). Debtor further requested that this Court declare the foreclosure null and void and order the Defendant to convey the property back to Debtor's estate. The remedy sought by Debtor in this action is clearly a plea to the equitable powers of this Court. As such, the viability of this action is appropriately measured by the residual four year limitations period provided by Texas law. *See* Tex.Rev.Civ.Stat. Ann. art. 5529 (Vernon 1984). Consequently, Debtor was required to bring this action within four years of the date of the allegedly improper sale, or before August 3, 1980.

The Texas decisions clearly support this conclusion. In *Countiss v. Baldwin,* 151 S.W.2d 235 (Tex.Civ.App.-San Antonio 1941, error dism'd), Baldwin filed an action in trespass to try title against Countiss to recover title to certain mineral interests. Baldwin's predecessor in title had executed a deed of trust to a bank. Shortly thereafter, title to the minerals covered by this deed of trust was conveyed to Baldwin. Fifteen years later, an event of default occured under the terms of the deed of trust, and the bank foreclosed. The mineral interest was then conveyed, through various *mesne* grantees, to Countiss. Several years later, Baldwin brought suit seeking, *inter alia,* a decree that her interest was not foreclosed by the deed of trust sale. The court disagreed, noting that "(a)fter the trustee's sale ... (Baldwin was) possessed at most with a mere equity of redemption, as distinguished from title, legal

**6.** *See* 15 U.S.C. § 1640(e).

or equitable, and such equity, if any, was barred by the four year statute of limitation, Art. 5529 ... and lost to (Baldwin) under the doctrine of laches and stale demand." 151 S.W.2d at 239 (citations omitted). This holding was subsequently approved by the Texas Supreme Court in *McGeorge v. Van Meter*, 163 Tex. 552, 358 S.W.2d 580, 582–83 (1962). Here, as in *Baldwin*, the plaintiff seeks to invoke the Court's equitable powers. Consequently, plaintiff subjects himself to the stringent demands equity makes of its supplicants. In this case, Debtor has been aware of the actions of Defendant of which he complains since August, 1976. Despite ample opportunity to do so, Debtor had not attempted to prosecute this action until nearly eight years after the fact. In the face of such a glaring failure to protect and enforce his rights within a reasonable time, Debtor can hardly be heard to assert any injury should Defendant's motion be granted.

In *Ebert v. Smith*, 146 S.W.2d 432 (Tex. Civ.App.-Galveston 1940, error dism'd), the plaintiffs sought relief from a judgment, entered in 1924, some fourteen years earlier, divesting them of certain mineral rights. The court acknowledged that the 1938 suit was an action in trespass to try title, and that all parties were apparently in agreement that the action would be governed by the ten year statute of limitations applicable to such actions. The court nonetheless applied the four year limitations period of article 5529.

> Still, it is thought, [plaintiffs] have become "hoist with their own petard", in that under their pleadings, their own exclusive proof, and their admissions in arguments, they have disclosed a situation and state of facts to which a court of equity was authorized to and should have applied the doctrine of laches or stale demand ... [plaintiffs] had been guilty of inexcusable delay in instituting this suit to vacate the pre-existing judgments against them, when they had been in possession of facts which charged them with notice of its existence more than four years before its entry ... [t]hat long and inexcusable delay upon their part,

under well settled authority in Texas, made it the duty of the court of equity to which they applied, in passing upon their appeal to its powers to relieve them from that open and public adjudication they were in duty bound to know about, to instead, deny their delayed request as a stale demand.

146 S.W.2d at 434. So, too, in the case at bar, is the plea to this Court's equitable powers precluded by stale demand. As in *Ebert*, Debtor here had ample notice of the facts surrounding Defendant's foreclosure and sale. The sale was open and public, and Debtor has not alleged that it was held without his knowledge. It is clear from Debtor's own pleadings that he was apprised of facts necessary to bring his action more than four years before this adversary proceeding was filed. It can only be concluded that he "had sinned away [his] day of grace in making [his] first move to do it so belatedly." *Ebert, supra*, at 434. *Cf. Hughes v. Wright*, 127 S.W.2d 215 (Tex. Civ.App.-Fort Worth 1939, no writ); *Berry v. Humble Oil & Refining Company*, 205 S.W.2d 376 (Tex.Civ.App.-Waco 1947, writ ref'd n.r.e.). This Court concludes that the four year statute of limitations provided by Texas law for equitable actions governs Debtor's complaint. This action is therefore barred as untimely.

To summarize, then, this Court has concluded that the land upon which Defendant foreclosed in August, 1976 was not property of the estate. Title to the land at the time of the foreclosure was in the names of the two nondebtor entities. This Court refuses to permit Debtor to twist the doctrine of alter ego, designed as an equitable tool for the use of innocent third parties damaged as a result of reliance upon the form of a legal entity, into a means of emasculating a creditor's legitimate exercise of its rights. Were this Court to entertain such a ploy, Debtor's complaint is nonetheless barred by the four year statute of limitations prescribed by Texas law and applicable to these proceedings through Section 11(e) of the Bankruptcy Act and relevant case law. Debtor's complaint has there-

fore been denied, and Defendant's motion for summary judgment has been granted.