In re H. Roger LAWLER, et al., Debtors.

H. Roger LAWLER, Plaintiff–Appellant,

v.

GUILD, HAGEN & CLARK, LTD., Defendant–Appellee.

Misc. No. 586–501.

Civ. A. Nos. CA 3–87–2667–G, CA 3–87–2668–G.

United States District Court, N.D. Texas, Dallas Division.

Nov. 15, 1989.

---

C. Thomas Wesner, Jr., Wesner Coke Boyd & Clymer, P.C., Dallas, Tex., for plaintiff-appellant.

Judith L. Weaver, Frank Finn, Terry L. Jacobson, Thompson & Knight, Dallas, Tex., for defendant-appellee.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on the appeal of plaintiff H. Roger Lawler ("Lawler") from the United States Bankruptcy Court's July 30, 1987 memorandum opinion and order[1] (1) allowing the law firm of Guild, Hagen & Clark, Ltd. ("Guild"), defendant-appellee, to withdraw with prejudice its proof of claim for attorney's fees, and (2) dismissing with prejudice Lawler's objections to Guild's proof of claim.

Lawler seeks reversal of the bankruptcy court's dismissal of his objections joined with what Lawler characterizes as "a compulsory counterclaim" included in his amended objection.[2] Specifically, Lawler asks this court to withdraw the case from the bankruptcy court and, after hearing, enter judgment for Lawler on his "counterclaim" or alternatively to reverse and remand the case to the bankruptcy court to determine the damages Lawler is due on his claim. In either event, Lawler seeks affirmance, as a sanction, of Guild's withdrawal of its proof of claim.[3] Guild, for its part, seeks affirmance of the bankruptcy court's decision in its entirety.[4] After a *de novo* review of the record, the court is of the opinion, for the reasons stated in this memorandum order, that the bankruptcy court's memorandum opinion and order should be affirmed.[5]

### I. *Background*

On January 9, 1976, an involuntary petition against Lawler was filed in the Bank-

1. *In re Lawler*, 75 B.R. 979 (Bankr.N.D.Texas 1987).

2. Lawler's brief at 44.

3. *Id.*

4. Guild's brief at 45–46.

5. Lawler also appeals the bankruptcy court's order of August 25, 1987 (bankruptcy docket #1424) denying a motion for sanctions against Guild attorney D. Anthony Clark ("Clark") for failure to appear at a noticed deposition. *See* exhibit 9 to Lawler's brief (Item 32 on Lawler's designation of record) at 19 (bankruptcy docket #1424).

On September 11, 1986, Guild's attorneys, Thompson & Knight, were served with a notice for an oral deposition duces tecum requiring Guild attorney Clark to appear on September 22, 1986 with certain documents for the purpose of giving testimony. *See* Guild's brief at 7 n. 6; exhibit 1 to item 26 on Lawler's designation of record (bankruptcy docket #1356a). Judith Weaver, the principal attorney for Guild, was on vacation when the notice of deposition was served. *See* exhibit 9 to Lawler's brief at 14, 17; Guild's brief at 7 n. 6. Because Ms. Weaver's partners, who were monitoring the file on this case while she was away, were busy with other matters, they did not contact Clark and opposing counsel to make arrangements for rescheduling the deposition. *See* exhibit 9 to Lawler's brief at 17. When Ms. Weaver returned on September 22, 1986, she received a call concerning the deposition around noon or 1:00 p.m., at which time she realized that no one had informed Clark of the deposition and that he was out of town that day. *Id.* at 17–18. Lawler has not included his original motion for sanctions in the appellate record, but it is apparent that on Thursday, September 25, 1986, Lawler filed the motion and on that same date asked Guild's attorney by letter to produce the requested documents by Friday, September 26, 1986 at 9:00 a.m. *See* Guild's brief at 8 n. 6; Lawler's brief at 41. Guild's attorneys saw the letter Friday morning and produced the documents later that day. Clark's deposition was eventually taken on October 13, 1986, the day before the hearing on the amended claim and objections. *See* Guild's brief at 8 n. 6; exhibit 9 to Lawler's brief at

ruptcy Court of the United States District Court for the District of Nevada. The case was transferred to the Bankruptcy Court of the Northern District of Texas on June 6, 1976, and Lawler consented to an adjudication of bankruptcy on January 20, 1978. The case was partially administered under Chapter VII of the Bankruptcy Act with L.E. Creel, III as receiver and trustee, and was later converted to a reorganization under Chapter XI of the Bankruptcy Act with Mr. Creel as operating trustee and disbursing agent. Through various actions brought by the trustee, it was determined that Lawler was solvent, and a "New Plan of Arrangement" was confirmed on April 30, 1984. That plan provided in part that unsecured creditors would receive the full amount of their allowed claims with interest from January 9, 1976.[6]

On February 20, 1976, Guild filed in the Nevada bankruptcy court a proof of claim in the amount of $15,565.40 for unpaid attorney's fees and expenses.[7] No supporting itemization of costs and services or other documents was attached to support the claim.[8] On March 9, 1978, after the case had been transferred to Dallas, Guild filed the identical claim (again, without supporting documents).[9]

On May 25, 1982, Lawler filed his first objection to Guild's four year old proof of claim on grounds that it lacked supporting documentation and that Guild had failed to give him credit for a paid retainer.[10] On

14–18. Lawler argued that the deposition was needed to prepare for the hearing and that, by way of sanctions, Guild should not be permitted to support its claim for attorney's fees, should not be allowed to call any witnesses in a trial of its claim, and should be required to pay Lawler his reasonable expenses, including attorney's fees. *See* item 26 on Lawler's designation of record at 3–4. The court orally denied the motion for sanctions at the hearing on October 14, 1986. *See* exhibit 9 to Lawler's brief at 19. On August 25, 1987, the court issued a written order denying Lawler's motion for sanctions. Lawler's brief at 13; Guild's brief at 7 n. 6. Lawler appeals from that order but has not designated it as part of the record on appeal.

Lawler argues that Clark's failure to appear was unexcused, that the delay in the deposition prejudiced his ability to prepare for the October 14, 1986 hearing, and that at a minimum, payment of attorney's fees and costs to Lawler as sanction was mandatory under F.R.Civ.P. 37(d) (adopted by Rule of Bankruptcy Procedure ("Act Rule") 737). *See* ·Rule of Practice and Procedure in Bankruptcy ("Code Rule") 7037. *See also* Part II(A) below. The court finds no merit in these arguments.

First, Lawler did not make the bankruptcy court's August 25, 1987 order part of the record on this appeal. *See* Act Rule 806; Code Rule 8006. The court is reluctant to find an abuse of discretion in an order Lawler did not bother to bring forward for review. Second, Lawler has suffered no prejudice from the ruling, because neither the bankruptcy court's July 30 order, nor this order affirming it, depends on the merits of Guild's proof of claim or Lawler's objections. *See* exhibit 9 to Lawler's brief. Third, neither in his arguments nor in his incompletely designated record has Lawler shown that the September 22, 1986 deposition was set pursuant to a court order, or that it was missed by Clark due to "flagrant bad faith or callous disregard of obligations fully understood." *Griffin v. Alu-*

*minum Company of America,* 564 F.2d 1171, 1172–73 (5th Cir.1977). Without such a showing, it is not within the court's discretion to order a sanction that would effectively dismiss the proof of claim. *Id. See Marshall v. Segona,* 621 F.2d 763, 766–68 (5th Cir.1980); *Bonaventure v. Butler,* 593 F.2d 625, 626 (5th Cir.1979). It is apparent from the record that Clark missed the deposition due to inadvertence of counsel and that he was deposed at a later, court-ordered date. Finally, there is no evidence before this court of any reasonable expenses incurred by Lawler when Clark failed to appear.

For all the foregoing reasons, the court finds no abuse of discretion by the bankruptcy court, and its order denying Lawler's motion for sanctions is affirmed.

6. These facts from Judge John C. Akard's opinion in *Lawler,* 75 B.R. at 980, are not disputed.

7. Exhibit 1 to Lawler's brief (item 10 on Lawler's designation of record).

8. *Id.*

9. Exhibit 11 to Lawler's reply brief (item 11 on Lawler's designation of record).

10. Exhibit 12 to Lawler's reply brief (item 12 on Lawler's designation of record) (bankruptcy docket # 626).

In the meantime, the IRS on November 23, 1979 filed an amended proof of claim for $16 million in taxes, interest, and penalties. After hearings on July 30, 1981 and October 8, 1981, Bankruptcy Judge Dean Gandy held all other matters under advisement until the tax claim could be resolved. *See* Lawler's brief at 8.

Judge Gandy resigned in mid–1983 and the case was eventually transferred to Judge John C. Ford. *See* Lawler's brief at 8. On November 30, 1983, Lawler settled with the IRS, allowing

February 15, 1984, Lawler filed an application for an order establishing a procedure for objections to claims. On February 17, 1984, the court issued a claims scheduling order which, in relevant part, set (1) March 1, 1984 as the last date for creditors to file proofs of claim and (2) April 3, 1984 as the date to hear the remaining proofs of claim and related objections. That order also stated that the hearing could be adjourned from time to time without notice other than that given at the hearing.[11]

On February 29, 1984, Guild filed an amended proof of claim for unpaid attorney's fees and expenses in the increased amount of $16,433.32, with an attached itemization of the services reflected in statements Guild sent to Lawler between December 1974 and April 1975.[12] The only differences between this amended proof of claim and Guild's prior proofs of claim were that the amended proof of claim sought interest at 7% per annum from April 23, 1975 (the date services ended) to January 9, 1976 (the date of the involuntary petition) and had supporting documentation attached.[13]

On April 3, 1984—the day Guild's proof of claim had been set for hearing by order of February 17, 1984—Lawler filed an amended objection to Guild's proof of claim asserting, for the first time, that Guild attorney Clark was guilty of malpractice and that Lawler in consequence was entitled to at least $510,000.00 "by way of counterclaim and setoff damages."[14] The

parties agree that the bankruptcy court adjourned the April 3, 1984 hearing without reaching Guild's claim.[15] On May 1, 1984, Guild filed a written response to Lawler's amended objection arguing (1) that it was filed and delivered to Guild in violation of Code Rule 3007 and (2) that the claim for damages or offset was barred by limitations.[16]

Judge Ford retired in September 1985 without hearing Guild's disputed claim. The case was subsequently reassigned to Judge John C. Akard of the Lubbock Division of the Northern District of Texas.[17] By notice of June 17, 1986, Judge Akard set Lawler's objections for hearing on October 14, 1986 and required that a proposed joint pretrial order be filed by October 1, 1986.[18]

On August 22, 1986, Guild filed a motion for summary judgment urging that the statute of limitations barred Lawler's amended objection.[19] On October 1, 1986, the parties filed a joint pretrial order, in which Lawler set out his malpractice claim and Guild again argued not only the bar of limitations but also that Lawler had raised the malpractice claim in bad faith.[20]

On October 8, 1986, Lawler filed a motion for expedited hearing or continuance of hearing on Guild's motion for summary judgment, asserting as grounds that Lawler needed the testimony of an out of town witness and Clark's deposition to prepare for the hearing.[21] See note 5 above. It

the estate to remain solvent and a plan to be prepared. *Id.* Judge Ford approved the settlement by order of December 20, 1983, and that order became final January 6, 1984. *Id.* at 8–9.

11. Lawler's brief at 9–10. This order is not designated in the appellate record (*but see* item 13 on Lawler's designation of record) (bankruptcy docket # 861).

12. Exhibit 14 to Lawler's reply brief (not designated in appellate record).

13. *Id. See* Exhibit 9 to Lawler's brief at 28.

14. Exhibit 2 to Lawler's brief (item 15 on appellant's designation of record) (bankruptcy docket # 905).

15. Lawler's brief at 10; Guild's brief at 4–5; exhibit 9 to Lawler's brief at 50. Apparently,

the court continued the hearing on Guild's claim to allow Guild more time to respond to Lawler's 11th hour amendment of the objection.

16. Item 17 on Lawler's designation of record (bankruptcy docket # 959).

17. Lawler's brief at 12.

18. Item 18 on Lawler's designation of record.

19. Item 19 on Lawler's designation of record (bankruptcy docket # 1335).

20. Exhibit 5 to Lawler's brief (items 23, 24 and 25 on Lawler's designation of record) (bankruptcy docket ## 1350 and 1352).

21. Items 20 and 21 on Lawler's designation of record (bankruptcy docket # 1353a).

appears that the bankruptcy court denied this motion, because at a late evening hearing on October 14, 1986, Judge Akard denied the motion for summary judgment (without discussing its merits on the record) and proceeded to trial on the amended claim and objections.[22] He then heard testimony from Clark on the merits of the amended objection until 11:30 p.m., at which time he called a recess until December 8, 1986.[23] When trial was recessed, Guild had completed its direct examination of Clark but Lawler had not finished his cross-examination.[24] Lawler claims that he also had witnesses of his own to present after Clark concluded his testimony.[25]

On November 26, 1986, before the bankruptcy court heard any further evidence concerning Guild's claim, Guild filed a motion for leave to withdraw its proof of claim and a motion for continuance containing a request for expedited hearing in light of the motion to withdraw proof of claim.[26] In its brief supporting that motion, Guild moved the court to reconsider its October 14, 1986 denial of Guild's motion for summary judgment and "reurged" that motion in light of Guild's motion to withdraw proof of claim.[27] Guild also renewed its argument that Lawler could not recover because he had not brought his counterclaim as an adversary proceeding.[28] The continuance was granted, a hearing on the motion was set for December 8, 1986 (the same date previously set for resumption of trial), and the issues raised on this appeal (including the issues that were the subject of the motion for summary judgment) were briefed for the bankruptcy court.[29]

In its motion, Guild sought to withdraw its proof of claim, but only on the condition that Lawler's objections, including counterclaims or offsets, also be dismissed. The bankruptcy court heard argument on the motion on December 8, 1986 and on July 30, 1987 entered its opinion and order allowing withdrawal of Guild's claim with prejudice and dismissing Lawler's objections with prejudice.[30] That opinion and order are the main subject of this appeal. *Compare* note 5 above.

## II. *Analysis*

### A. Applicable Law

The parties agree that this case, which was commenced on January 9, 1976, is governed by the Bankruptcy Act of 1898. *See* Act of Nov. 6, 1978 (Bankruptcy Reform Act of 1978), Pub.L. No. 95–598, § 403(a), 92 Stat. 2549, 2683. Lawler argues, however, that the bankruptcy court erred in applying the Rules of Practice and Procedure in Bankruptcy ("Code Rules") (prescribed by the Supreme Court on April 25, 1983[31] and effective on August 1, 1983) rather than the former Rules of Bankruptcy Procedure ("Act Rules") (prescribed by the Supreme Court on April 24, 1973,[32] March 18, 1974,[33] April 28, 1975[34] and April 26, 1976[35]). While Guild does not contest the issue, it argues that the result of the appeal and much of the analysis is the same whether the Act Rules or the Code Rules apply. The court agrees with Guild and finds no merit in Lawler's position.

The bankruptcy court held that the Code Rules govern procedural matters in cases pending on August 1, 1983, when the rules became effective. *Lawler*, 75 B.R. at 981

---

**22.** Exhibit 9 to Lawler's brief at 19.

**23.** *Id.* at 132–34.

**24.** *Id.* at 131.

**25.** Lawler's brief at 39–40.

**26.** Exhibit 3 to Lawler's brief (item 27 on Lawler's designation of record) (bankruptcy docket # 1358).

**27.** Item 28 on Lawler's designation of record (bankruptcy docket # 1361) at 6.

**28.** *Id.* at 4–5.

**29.** Items 29, 30 and 31 on Lawler's designation of record (bankruptcy docket ## 1360, 1363, 1365, and 1367); exhibit 4 to Lawler's brief.

**30.** Exhibits 6, 7 and 10 to Lawler's brief.

**31.** 461 U.S. 973 (1983).

**32.** 411 U.S. 989 (1973).

**33.** 415 U.S. 1003 (1974).

**34.** 421 U.S. 1019 (1975).

**35.** 425 U.S. 1003 (1976).

(quoting Supreme Court order of April 25, 1983). *See* 11 U.S.C. Bankruptcy Rules at XIII:

> [T]he ... Bankruptcy Rules shall take effect on August 1, 1983, and shall be applicable to proceedings then pending, except to the extent that in the opinion of the court their application in a pending proceeding would not be feasible or would work injustice, in which event the former procedure applies.

It noted, however, that "only slight differences exist" between the Act and Code Rules applicable to this case and that the result would be the same under either set of rules. *Lawler,* 75 B.R. at 981–83 and nn. 3, 4, 5, 7 and 9. This court agrees that the Supreme Court's order is unequivocal in its application of the Code Rules to all cases pending on August 1, 1983. Code Rules 1001 is equally broad in applying the Code Rules to all cases "under title 11 of the United States Code," the title codifying both the 1898 and 1978 statutes.

The advisory committee notes to Code Rule 1001 cannot be so broadly construed. They distinguish between the "Bankruptcy Code" (or "Code") (i.e., the Bankruptcy Reform Act of 1978) and the "Bankruptcy Act" (or "Act") (i.e., the Bankruptcy Act of 1898). 11 U.S.C. Rule 1001 at 16. The notes go on to state that the rules "apply to all cases filed under the Code except as otherwise specifically stated," suggesting that the Code Rules do not apply to Act cases. *See In re Silverman,* 36 B.R. 254, 257 (Bankr.S.D.N.Y.1984); *1616 Reminc Limited Partnership v. Atchison & Keller*

*Company,* 704 F.2d 1313, 1315 n. 6 (4th Cir.1983). *See also Matter of Chicago, Milwaukee, St. Paul and Pacific Railroad Co.,* 840 F.2d 1308, 1314 n. 5 (7th Cir.1988); *Matter of Lawler,* 807 F.2d 1207, 1210 (5th Cir.1987).

Although this court is persuaded by the broader language of the Supreme Court's order and Rule 1001, *cf. Central Trust Company, Rochester, N.Y. v. Official Creditors' Committee of Geiger Enterprises, Inc.,* 454 U.S. 354, 359–60, 102 S.Ct. 695, 696–97, 70 L.Ed.2d 542 (1982), there is no need to resolve the question today because the outcome of this appeal is the same under either the Act Rules or Code Rules.

### B. Standard of Review

■ 1. *Withdrawal of Guild's Proof of Claim.* The bankruptcy court's decision to grant Guild leave to withdraw its proof of claim is subject to review only for abuse of discretion. *Schwarz v. Folloder,* 767 F.2d 125, 129–30 (5th Cir.1985); *Radiant Technology Corporation v. Electrovert USA Corporation,* 122 F.R.D. 201, 202–204 (N.D.Tex.1988). *See* Act Rule 305 [36]; Code Rule 3006.[37] *See also* 12 Moore and King, Collier on Bankruptcy ¶ 305.02 at 3–53 (14th ed. 1978) (Act Rule 305 derived from F.R.Civ.P. 41(a)); 8 King, Collier on Bankruptcy ¶¶ 3006.01–3006.02 (15th ed. 1989) (same as to Code Rule 3006).

If Lawler's objections were brought to defeat Guild's proof of claim, dismissal of that claim with prejudice meant that the

---

**36. Rule 305. Withdrawal of Claim.**

A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If, after a creditor has filed a claim, an objection is filed thereto or a complaint is filed against him in an adversary proceeding or the creditor participates significantly in the case or receives a dividend, he may not withdraw the claim save on application or motion, with notice to the trustee or receiver, and on order of the court containing such terms and conditions as the court deems proper.

**37. Rule 3006. Withdrawal of Claim or Acceptance or Rejection of Plan.**

A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as

provided in this rule. If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, or the creditor has accepted or rejected the plan or otherwise has participated significantly in the case, the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession, and any creditors' committee selected pursuant to §§ 705(a) or 1102 of the Code. The order of the court shall contain such terms and conditions as the court deems proper. Unless the court orders otherwise, an authorized withdrawal of a claim shall constitute withdrawal of any related acceptance or rejection of a plan.

objections prevailed. *See Lawler,* 75 B.R. at 983 ("When Guild withdrew its claim, Lawler received everything to which he was entitled, namely the reduction of Guild's claim to zero"). But to the extent that Lawler was seeking affirmative relief, there are reasons independent of Guild's withdrawal of its proof of claim for dismissing Lawler's claim. *Lawler,* 75 B.R. at 982–85. *See* Parts II(C)(1) and (2) below. *See also* 9 Wright and Miller, Federal Practice and Procedure § 2365 at 175 (1971). Thus, there was no abuse of discretion in allowing the withdrawal. *Schwarz,* 767 F.2d at 129; *Radiant Technology Corp.,* 122 F.R.D. at 203–04.[38]

■■■■ 2. *Dismissal of Lawler's Objections and Claims for Offset or Affirmative Relief.* The bankruptcy court's conclusions of law are subject to *de novo* review by this court. *Cf. Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1307 (5th Cir.1985). *Accord Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1252 (5th Cir.1986); *Raine v. Lorimar Pro-*

*ductions, Inc.,* 71 B.R. 450, 452 (S.D.N.Y. 1987). *See* 9 King, Collier on Bankruptcy ¶¶ 8013.02–8013.03 at 8013–2 to 8013–5 (15th ed. 1988). *See also* Code Rule 8013; Act Rule 810. *De novo* review requires this court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions. *See Moody v. Amoco Oil Company,* 734 F.2d 1200, 1210 (7th Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984). *See also In re Price–Watson Co.,* 66 B.R. 144, 149 (Bankr.S.D.Tex.1986).

■■■■ According to Code Rule 8013[39] and Act Rule 810,[40] the court's factual findings are subject to review under a "clearly erroneous" standard. *See Richmond Leasing Co.,* above, 762 F.2d at 1307–08. But Lawler argues that application of a "clearly erroneous" standard would be unconstitutional, citing *1616 Reminc Limited Partnership,* above, 704 F.2d at 1316–18.[41] Lawler would have this court review the facts giving rise to this appeal *de novo.* Citing this one case without analysis does not establish, in the context of this appeal,

**38.** Lawler argues that the motion to withdraw proof of claim applied only to Guild's original claim and not to Guild's amended proof of claim filed February 29, 1984. *See* Lawler's brief at 6, 13. This argument borders on the frivolous. The motion to withdraw refers to the original amount of the claim as well as its present value considering accrued interest. *See* exhibit 3 to Lawler's brief. Nothing in the motion suggests that Guild intended to withdraw anything other than the claim it had pending at the time its motion was filed. *See* Part I above.

**39. Rule 8013. Disposition of Appeals; Weight Accorded to Bankruptcy Judge's Findings of Fact.**

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

**40. Rule 810. Disposition of Appeal: Weight Accorded Referee's Findings.**

Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the ref-

eree's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses.

**41.** In *1616 Reminc,* the Fourth Circuit held that the application of Act Rule 810's "clearly erroneous" standard to a bankruptcy court's findings of fact on a claim and counterclaim rooted in state law "unconstitutionally vested the non-Article III bankruptcy referee with too great a measure of the judicial power of the United States." 704 F.2d at 1318 (citing *Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* 458 U.S. 50, 91–92, 102 S.Ct. 2858, 2881–82, 73 L.Ed.2d 598 (1982) (Burger, C.J., dissenting). *1616 Reminc* turned on whether the subject of the appeal was a traditional state common law cause of'action "not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law," i.e., whether the subject of the appeal was a core or non-core proceeding under 28 U.S.C. § 157(b)(2) and (c)(1). *Id. See Harman v. Levin,* 772 F.2d 1150, 1153 n. 3 (4th Cir.1985). *See also In re Martin,* 761 F.2d 1163, 1166 (6th Cir.1985); *In re Reid,* 757 F.2d 230, 233 n. 5 (10th Cir.1985). Here, Guild's proof of claim and Lawler's objection claiming affirmative relief are founded on state law claims independent of and antecedent to the petition. They are therefore analogous to "non-core" proceedings entitled to *de novo* review.

the unconstitutionality of Code Rule 8013 or Act Rule 810. The issue does not need to be addressed further, however, because the parties are in substantial agreement regarding the procedural history recounted in Part I above. Even under a *de novo* review of the record, which this court has performed, the ruling of the bankruptcy court may be affirmed. Thus, the constitutional question raised by Lawler need not be discussed. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).[42]

C.  Analysis

1. *Notice and Nature of Lawler's Amended Objection*

■  Objections to claims are governed by Code Rule 3007, which provides:

An objection to the allowance of a claim shall be in writing and filed with the court. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

Similarly, Act Rule 306(c) provides:

(c) *Objection to Allowance.*—An objection to the allowance of a claim for the purpose of distribution shall be in writing. A copy of the objection and at least 10 days' notice or, if the claim is for

taxes, at least 30 days' notice of a hearing thereon shall be mailed or delivered to the claimant. If an objection to a claim is joined with a demand for relief of the kind specified in Rule 701, the proceeding thereby becomes an adversary proceeding.[43]

At a minimum, therefore, assuming that Lawler was not bound by the requirements for commencing an adversary proceeding, and assuming further that the Act Rules apply, Guild was entitled to a copy of Lawler's amended objection with a notice of hearing thereon "at least" 10 days before any such hearing. *See In re Ambassador Park Hotel, Ltd.*, 61 B.R. 792, 798 (N.D. Tex.1986). *See also* Code Rule 9014 (in contested matters, reasonable notice and opportunity for hearing must be afforded to "party against whom relief is sought"; certain rules governing adversary proceedings apply, and the court may direct that "other rules in Part VII shall apply"); Act Rule 914 (same). On February 17, 1984, the bankruptcy court ordered, at Lawler's instance, that March 1, 1984 would be the last date for filing proofs of claims and that such claims would be heard on April 3, 1984. In conformity with this order, Guild filed its proof of claim on February 29, 1984. In violation of Code Rule 3007 and Act Rule 306(c), however, Lawler did not file his amended objection claiming malpractice until the date of the hearing. The bankruptcy court relied in part on this shortcoming to dismiss Lawler's amended objection. *Lawler*, 75 B.R. at 982.

**42.** This conclusion is reinforced by the action of the bankruptcy court in granting Guild's renewed motion for summary judgment, which asserted insufficient notice and the statute of limitations as grounds. In reviewing an order of summary judgment, this court must view the case in the same manner as the bankruptcy court, asking whether there are any genuine issues of material fact and whether Guild was entitled to judgment as a matter of law, viewing the record and facts in the light most favorable to Lawler, the non-moving party. *McCrae v. Hankins*, 720 F.2d 863, 865 (5th Cir.1983). *See Keado v. United States*, 853 F.2d 1209, 1211 (5th Cir.1988); *Arkwright–Boston Manufacturers Mutual Insurance Company v. Westinghouse Electric Corp.*, 844 F.2d 1174, 1176 (5th Cir.1988). *Accord Frederick S. Wyle Professional Corporation v. Texaco, Inc.*, 764 F.2d 604, 608 (9th

Cir.1985). *See also Brewster v. City of Dallas*, 703 F.Supp. 1260, 1263 (N.D.Tex.1988) (setting out legal standard for summary judgment).

**43.** Act Rule 306(a) provides:

(a) *Trustee's Duty to Examine and Object to Claims.*—The trustee shall examine proofs of claim and object to the allowance of improper claims, unless no purpose would be served thereby.

In spite of the wording of 306(a), a bankrupt, whether or not he is a debtor in possession, may object to a proof of claim for the purpose of distribution. 12 Moore and King, Collier on Bankruptcy ¶ 306.06[1] at 3–67 (14th ed. 1978); 14 *id.* ¶ 11–33.09 at 11–33–26 to 11–33–27 (14th ed. 1976). *See* Act Rule 306(b).

The bankruptcy court was also of the opinion that for Lawler to obtain damages, his malpractice claim should have been brought as an adversary proceeding subject to the requirements of Code Rule 7001[44] *et seq.* or alternatively Act Rule 701[45] *et seq.* The court reasoned that the filing of an objection to a proof of claim was not sufficient to commence an adversary proceeding, that the allegation of malpractice could be used against the proof of claim only as a defense, and that Lawler therefore received all the relief to which he was entitled when the court granted Guild leave to withdraw its claim with prejudice. *Lawler,* 75 B.R. at 982–83 (citing *Agger v. Seaboard Allied Milling Corp. (In re Cushman Bakery),* 526 F.2d 23, 35 (1st Cir.1975), *cert. denied,* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976)).

Lawler argues that the bankruptcy court's reasoning was in error because (1) an objection may be made at "any time prior to allowance of a claim," (2) a proof of claim and objection are tantamount to a complaint and answer in a civil action, and thus an objection joined with a counterclaim need only be served on opposing counsel without a summons or payment of a filing fee, (3) the joint pretrial order signed and submitted by both counsel superseded "all prior pleadings and servings," (4) Guild waived any objection to insufficiency of notice or process because it went to trial on the merits of Lawler's objection joined with his counterclaim, (5) it was the bankruptcy judge's duty "to disallow Guild's claim or to inquire into its fairness," and (6) the malpractice allegation was brought as a compulsory counterclaim under Act Rule 713, thereby converting the matter to an adversary proceeding without subjecting Lawler to the prerequisites for commencing an adversary proceeding.[46] All of these arguments are without merit.

■ First, Lawler relies on the following language from 12 Moore and King, Collier on Bankruptcy ¶ 306.06[3] at 3–68 (14th ed. 1978):

> [Act] Rule 306 does not set any time period within which an objection to allowance for purpose of distribution must be filed. A cutoff date would be inappropriate, since in many cases it is not known until late in the administration of a case whether there will be any dividend.... To avoid such waste, Rule 306(a) provides that the objection need not be filed if it would serve no purpose.

*See* Lawler's brief at 30–31. *See also* 11 U.S.C. § 93(f) (repealed):

> Objections to claims shall be heard and determined as soon as the convenience of the court and the best interests of the estates and the claimants will permit.

These policy reasons for not having a deadline to file objections in bankruptcy cases generally did not apply in this case on the date Lawler filed his amended objection. As of December 2, 1983, a substantial payment on the principal amount of all claims (possibly 100%) was contemplated by Lawler's plan.[47] Moreover, Lawler's earlier objection to Guild's proof of claim was clearly indicative of a need, perceived by Lawler and the court in the February 17, 1984 scheduling order, to dispose of claims in an orderly and efficient way. And it is apparent that the documentation attached to Guild's amended proof of claim consisted of copies of bills for attorneys fees and expenses that Lawler had received in 1974 and 1975.[48] Against this backdrop, Lawler's arguments that Guild needed no notice of his amended objection, and that bank-

---

**44.** **Rule 7001. Scope of Rules of Part VII.**
An adversary proceeding is governed by the rules of this Part VII. It is a proceeding (1) to recover money or property....

**45.** **Rule 701. Scope of Rules of Part VII.**
The rules of this Part VII govern any proceeding instituted by a party before a bankruptcy judge to ... recover money or property....

Such a proceeding shall be known as an adversary proceeding.

**46.** Lawler's brief at 29–34; Lawler's reply brief at 18–24.

**47.** Lawler's brief at 8.

**48.** Exhibit 14 to Lawler's reply brief; exhibit 9 to Lawler's brief at 41–45.

ruptcy cases generally require none, is unpersuasive.

■ Second, Lawler argues that the notice and service requirements of Code Rules 3007 and 9014 and Act Rules 306(c) and 914 are somehow abrogated by the Fifth Circuit's opinion in *In re Simmons*, 765 F.2d 547, 552 (5th Cir.1985) (citing *Nortex Trading Corp. v. Newfield*, 311 F.2d 163 (2d Cir.1962)). There the court observed in *dicta:*

> It has been said that the filing of a proof of claim is tantamount to the filing of a complaint in a civil action ... and the trustee's formal objection to the claim, the answer.

*Simmons*, 765 F.2d at 552 (citations omitted). This statement does not, however, abrogate the provisions of the bankruptcy rules in favor of the pleading requirements of the Federal Rules of Civil Procedure.

> If the objection is joined with ... a counterclaim, it becomes an adversary proceeding under Rule 3007 and is governed by the procedures set out in Part VII of the Bankruptcy Rules.

*Simmons*, 765 F.2d at 552 n. 5.

■ To recover damages, "an objection to claim coupled with a counterclaim for affirmative relief ... must be begun by adversary proceedings under Part VII of the Bankruptcy Rules and not as a mere objection to claim, a contested matter, under [Act] Rule 914." 14 Moore and King, Collier on Bankruptcy ¶ 11–33.09[1] at 11–33–29 (14th ed. 1976). The same principle applies under Code Rule 3007. 8 King, Collier on Bankruptcy ¶ 3007.03 at 3007–2 to 3007–3 and n. 4 (15th ed. 1989). Thus, no matter whether the Act or Code Rules apply, Lawler was required to comply with the service and filing requirements of Code Rules 7003 and 7004 or Act Rules 703 and 704. Even assuming *arguendo* that proper notice of the amended objection was given by Lawler under Code Rule 3007 or Act Rule 306(c) or was waived by Guild, the bankruptcy court was nonetheless without authority to grant affirmative relief on Lawler's malpractice claim unless an adversary proceeding had been properly commenced. At best, the malpractice claim

could be used defensively against Guild's proof of claim. *See In re Cushman Bakery*, above, 526 F.2d at 35.

In his third and fourth arguments, Lawler contends that the joint pretrial order filed on October 1, 1986 and the partial trial on the merits of Lawler's amended objection constituted a waiver by Guild of any claim that notice or service of process was insufficient. In exhibits B, D and F to the pretrial order, Guild set forth the timing of Lawler's amended proof of claim and asserted that Lawler's malpractice claim was barred by Nevada statutes of limitations and was brought in bad faith. Lawler laid out, in his corresponding exhibits A, C and E, the malpractice claim. Although the issue was not included in the pretrial order, Guild argued violation of Code Rules 3007 and 7001 *et seq.* in its May 1, 1984 response to Lawler's amended objection and again in its November 26 and December 8, 1986 motion and brief for leave to withdraw its proof of claim.

■ Code Rule 7016 and Act Rule 716 both state simply that Fed.R.Civ.P. 16 "applies in adversary proceedings." Lawler's argument thus places the cart before the horse. A pretrial order issued pursuant to Fed.R.Civ.P. 16 cannot bind the parties or the court in a bankruptcy case unless the court is conducting an adversary proceeding. Even if F.R.Civ.P. 16 were applicable, the bankruptcy court did not abuse its discretion here. Its decision on the adequacy of notice of Lawler's amended objection and whether an adversary proceeding had been properly commenced were questions of law applicable to an undisputed procedural history. The court raised the first question (adequacy of notice) *sua sponte* in the memorandum opinion and order which is the subject of this appeal. Lawler fully briefed the second question (whether an adversary proceeding had been properly commenced) when Guild filed the motion for leave to withdraw its claim. Given the lack of prejudice to Lawler, the highly questionable applicability of F.R.Civ.P. 16, and the briefs before the bankruptcy court, that court did not abuse its discretion in addressing these disposi-

tive questions. *Sherman v. United States,* 462 F.2d 577, 579 (5th Cir.1972). *See Trinity Carton Company, Inc. v. Falstaff Brewing Corp.,* 767 F.2d 184, 192 n. 13 (5th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1202, 89 L.Ed.2d 315 (1986); *Hodges v. United States,* 597 F.2d 1014, 1017–18 (5th Cir.1979); *Wallin v. Fuller,* 476 F.2d 1204, 1208–10 (5th Cir.1973).

■■■ As to Lawler's argument ·that the bankruptcy court had to disallow Guild's proof of claim or inquire into its fairness, there was no need for an inquiry once that court allowed the claim to be withdrawn. It is the fairness of the withdrawal, not the fairness of the claim itself, that is at issue in this appeal.

Finally, Lawler argues that because his malpractice counterclaim was compulsory, the matter was converted from a contested proceeding under Code Rule 9014 or Act Rule 914 to an adversary proceeding under Code Rules 3007 and 7001 *et seq.* or Act Rules 306(c) and 701 *et seq.* Specifically, Lawler asserts that the attachments to Guild's amended proof of claim contained the "first ... notice [to Lawler] of the nature of the claim and Lawler's compulsory counterclaim arising therefrom." [49] This statement is at best disingenuous. The documents attached to Guild's amended proof of claim had been sent to Lawler some 9 years before. Lawler does not contend that he failed to receive or notice the bills when they were sent.[50]

■■■■ In any event, Lawler again puts the cart and the horse in the wrong order. Code Rule 7013 and Act Rule 713 both state that F.R.Civ.P. 13 "applies in adversary proceedings...." It is hard to see how a supposedly compulsory counterclaim can convert a contested matter into an adversary proceeding when the rules contemplate that an adversary proceeding must exist before the rule governing compulsory counterclaims will apply. Ordinarily, the compulsory counterclaim rule does not apply in contested proceedings. *See* Code

Rule 9014; Act Rule 914. *Accord* 13 Moore and King, Collier on Bankruptcy ¶ 713.03[1] at 7–204 to 7–205 (14th ed. 1977); 9 King, Collier on Bankruptcy ¶ 7013.04 at 7013–5 to 7013–7 and n. 1 (15th ed. 1988). *See also* 13 Moore and King, Collier on Bankruptcy ¶ 914.03 at 9–61 (14th ed. 1977) ("[t]he formal procedural approaches to adversary proceedings set out in Part VII are ... inappropriate to decide contested matters where the issues are relatively simple"); 9 King, Collier on Bankruptcy ¶ 9014.05 at 9014–4 to 9014–5 (15th ed. 1988) (same). A counterclaim is not "compulsory" when the Rule governing such a claim does not apply to the proceeding at hand.

■■■ Lawler responds that requiring him to formally commence an adversary proceeding under Part VII of the Code or Act Rules defies common sense and the text of Code Rule 3007 and Act Rule 306(c). The operative language in Code Rule 3007 states:

If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

Similarly, Act Rule 306(c) provides:

If an objection to a claim is joined with a demand for relief of the kind specified in Rule 701, the proceeding thereby becomes an adversary proceeding.

Citing a general dictionary and a law review article, Lawler asserts that the terms "thereby" and "becomes" should be read, in essence, to "convert without requiring service of process and summons and payment of a filing fee under Part VII of the Act rules." He reasons as follows:

Only sheer foolishness would suggest the need to commence a separate proceeding by the filing of a separate complaint, the payment of ·a filing fee, the issuance of summons, and the service of citation when a proceeding is pending already between the same parties before the Referee on the same transaction.

---

**49.** Lawler's brief at 35.

**50.** *See* Lawler's brief at 13–28; exhibit 9 to Lawler's brief at 45, 89. *See also* Lawler's brief

at 35–40; Lawler's reply brief at 11, 14–15, 18–22.

The transformation occurred by operation of law under Act Bankruptcy Rule 306(c) without more when Lawler filed his objection joined with his counterclaim. If this were not the case, then there would be *two* proceedings pending—the contested proceeding initiated by filing the proof of claim and the adversary proceeding initiated by the complaint. That would defy common sense.[51]

The court is unpersuaded. *Collier* interprets the pertinent language in Rules 306(c) and 3007 not to *automatically* convert the contested matter to an adversary proceeding (i.e., not to abrogate the prerequisites for commencing such a proceeding under Code Rules 7001 *et seq.* or Act Rules 701 *et seq.*), but to subject the objecting party to the rules governing adversary proceedings if he wants to obtain affirmative relief.

There are at least two reasons for this interpretation. First, contested matters under Code Rule 9014 or Act Rule 914 and adversary proceedings under Part VII of the Code or Act Rules are governed by different procedural rules permitting different types of relief. Second, adversary proceedings are generally more complex in nature than contested matters. Reading Rules 3007 and 306(c) to require the objecting party to comply with the notice and procedural requirements and Part VII of the rules is necessary to clearly draw the line between the two types of proceedings, and to put the original claimant on notice that he may be liable to the objector for damages—relief not available in a contested proceeding. The key point is that an objection to a proof of claim only commences a contested matter under Code Rule 9014 or Act Rule 914. *See In re Poage*, 92 B.R. 659, 664 (Bankr.N.D.Tex. 1988). When a claim for affirmative relief is filed, Rules 3007 and 306(c), rather than abrogating the machinery of Part VII of the rules, leave it to the claimant to put that machinery in motion.

## 2. *Bar of Lawler's Malpractice Claim by Statute of Limitations* [52]

The substance of Lawler's malpractice claim is set out in the margin.[53] Essential-

51. Lawler's reply brief at 20 (emphasis in original).

52. Although the grounds discussed in Part II(C)(1) dispose of this appeal, the court will, for the sake of completeness, assume *arguendo* that Lawler properly commenced an adversary proceeding and thus reach the merits of this issue.

53. In his amended objections of April 3, 1984, Lawler stated:

The objection of H. Roger Lawler et. al., filed May 20, 1982, is hereby amended by the following additions:

Debtors assert by way of counterclaim and setoff damages in the amount of at least $510,000 arises from certain course of action pursued by Anthony Clark, name partner in the claimant law firm. Mr. Clark represented Mr. Lawler in connection with Mr. Lawler's attempt to preserve his interest in the Soldiers Meadows Ranch in Nevada. Mr. Lawler had originally acquired the ranch in 1973 from Baer Ranch, Inc., for approximately $1,200,000, composed of approximately $300,000 in cash and debt of approximately $900,000. The property was taken subject to a first lien of approximately $500,000 to the Federal Land Bank and a second lien of approximately $150,000 debt to John Casey. The seller of the ranch to Mr. Lawler, Baer Ranch, Inc., had a third lien to secure approximately $300,000. In 1974 and 1975, Mr. Lawler fell behind in his obligations, the ranch was foreclosed upon, and Mr. Lawler filed suit to contest the foreclosure. Subsequently, Baer Ranch, Inc. (or its owner) became unable to carry the first and second lien debt. Acting on the advice of Mr. Clark, Mr. Lawler agreed to pay off the second lien debt, reinstate the debt to Baer Ranch, Inc. and withdraw the suit contesting the foreclosure. Thereafter Mr. Lawler paid off the second lien, which with interest and attorneys fees had grown to approximately $210,000. The day prior to Clark paying off the Casey note of approximately $210,000 with a Cashier's Check provided by Lawler, Clark refused to obtain written agreement from Baer showing the verbal deal for Baer to immediately reconvey the ranch to Lawler. Then within a few days Clark surrendered to Baer documents releasing Lawler's claim on the ranch without Lawler's knowledge or consent. The results of this action was that Mr. Lawler did not recover the ranch as agreed upon and lost not only the $210,000 paid on the second lien, but also lost his equity in the ranch of approximately $300,000.

WHEREFORE, H. Roger Lawler, et. al., pray that the proof of said claimant be denied, that the debtors be awarded damages in the amount of $510,000, and that the debtors have such other and further relief as may be just and appropriate.

ly, Lawler complained that Guild attorney Clark committed malpractice by failing to preserve Lawler's interest in the Soldiers Meadows Ranch when, among other things, he released Lawler's claim in the ranch without Lawler's knowledge or consent. Assuming that all of Lawler's evidence regarding the statute of limitations issue is true, and giving Lawler the benefit of every justifiable favorable inference,[54] the court finds that on June 11, 1974 the Baer Ranch, Inc. sued Lawler alleging default in payment of a $250,000 promissory note executed by Lawler as maker.[55] On August 16, 1974, Lawler hired Guild attorney Clark to represent him in various matters, including the Baer Ranch lawsuit.[56] Clark withdrew as Lawler's attorney in the Baer Ranch lawsuit on April 24, 1975.[57] On February 24, 1975, Lawler—represented by Clark—filed suit against the Baer Ranch to force conveyance of the ranch to Lawler.[58] Clark never formally withdrew from this lawsuit, and the court dismissed the case on its own motion on September 15, 1975.[59]

In his affidavit in support of Guild's August 22, 1986 motion for summary judgment, Clark states that he was in constant contact with Lawler regarding the Baer Ranch suit:

> From December until the date I withdrew as attorney of record, sometime in April of 1975, I was in constant contact with Mr. Lawler regarding the fact that while he had paid off the second lien note, Baer Ranch, Inc. refused to reconvey the property to Lawler. The fact that Baer Ranch, Inc. refused to return the property to Mr. Lawler was never kept from Mr. Lawler, and he at all times knew that there was a problem. In fact,

on February 24, 1975, I filed a complaint and notice of Lis Pendens, seeking to compel Baer Ranch, Inc. to convey the real property back to Mr. Lawler.... I filed this complaint on the instruction of H. Roger Lawler.

\*     \*     \*     \*     \*     \*

> After we withdrew as attorney of record in the Baer litigation, we continued to respond to phone calls and do other minor clerical work for Mr. Lawler until October 25, 1975. Thereafter, we did not represent Mr. Lawler.[60]

As this affidavit reveals, the notice of lis pendens was filed as part of Lawler's lawsuit to compel conveyance of the ranch. That notice, attached as exhibit C to Guild's motion for summary judgment, is dated February 24, 1975 and bears Lawler's signature. Most of the actions complained of by Lawler occurred prior to the notice of lis pendens, with the notable exception of Clark's refusal to sign a stipulation for dismissal of the second lawsuit until Lawler paid him.[61]

The bankruptcy court held (1) that the Nevada two-year statute of limitations applied; (2) that the statute ran from the time that Lawler knew or should have known all facts material to a malpractice claim; (3) that Lawler's signature on the notice of lis pendens evidenced his knowledge of all facts material to a malpractice claim against Clark; and (4) that the Nevada statute of limitations barred Lawler from asserting malpractice as a ground for affirmative relief, thereby rejecting Lawler's arguments that 11 U.S.C. § 29(e), the parties' joint pretrial order, or Act Rule 306(c)

Exhibit 2 to Lawler's brief.

**54.** *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Brewster,* 703 F.Supp. at 1263 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)).

**55.** Lawler's brief at 14.

**56.** *Id.;* exhibit 9 to Lawler's brief at 24.

**57.** Lawler's brief at 14; exhibit 9 to Lawler's brief at 42, 45.

**58.** Lawler's brief at 20–21; exhibit 9 to Lawler's brief at 59.

**59.** Lawler's brief at 26; exhibit 9 to Lawler's brief at 66–67.

**60.** Affidavit of Drennan Anthony Clark (item 19 on Lawler's designation of record) (bankruptcy docket # 1335).

**61.** Lawler's brief at 26–27; exhibit 9 to Lawler's brief at 64–66.

foreclosed Guild's statute of limitations defense. *Lawler,* 75 B.R. at 983–85.

On appeal, Lawler argues (1) that if a Nevada statute of limitations does apply, it is a four year, and not a two year, statute; (2) that 11 U.S.C. § 791 tolled all statute of limitations, including 11 U.S.C. § 29(e); (3) that 11 U.S.C. § 29(f) and Act Rule 306(c) tolled any state statute of limitations; (4) that Lawler's claim, as a compulsory counterclaim, entitled Lawler to equitable tolling of any statute of limitations; and (5) that the policy of 11 U.S.C. § 29(e) conflicts with, and therefore precludes, the application of any state statutes of limitation.[62]

■ This court agrees with Judge Akard that the Nevada statute of limitations controls Lawler's malpractice claim, because the claim arose under Nevada law, "the alleged malpractice occurred in Nevada, Guild's practice was in Nevada, and the ranch was located in Nevada." *Lawler,* 75 B.R. at 984 n. 12. Subject to his arguments for tolling or preemption by federal law, *see* Parts II(C)(2)(a) and (b) below, Lawler does not dispute that the Nevada statute applies. Putting the issues of federal law to one side momentarily, the court will first consider the question of limitations under Nevada law.

■ In 1981, the Nevada legislature enacted a 4 year statute of limitations for attorney malpractice. Nevada Revised Statutes § 11.207.[63] *See Oak Grove Investors v. Bell & Gossett Company,* 99 Nev.

616, 668 P.2d 1075, 1078–79 (1983). *See also Vari–Build, Inc. v. City of Reno,* 622 F.Supp. 97, 101 (D.Nev.1985). Before 1981, a two year statute applied to attorney malpractice actions sounding in tort. Nevada Revised Statutes § 11.190(4)(e).[64] *See Jewett v. Patt,* 95 Nev. 246, 591 P.2d 1151, 1151–52 (1979). For purposes of either statute, a cause of action does not accrue, and therefore limitations does not begin to run, "until the plaintiff discovers, or should have discovered, all facts material to the elements of the cause of action, including the sustaining of damages." *Oak Grove Investors,* 668 P.2d at 1078–79; *Sorenson v. Pavlikowski,* 94 Nev. 440, 581 P.2d 851, 853–54 (1978). The latest conduct of Clark which Lawler contends was malpractice occurred immediately before dismissal of Lawler's lawsuit against Baer Ranch on September 15, 1975. The limitations period in effect at that time was two years. Nevada Revised Statutes § 11.190(4)(e).

Lawler argues vehemently that he did not discover the basis for his malpractice claim until Guild filed its amended proof of claim on February 29, 1984.[65] As noted in Part II(C)(1) above, however, there was nothing in the bills and invoices attached to Guild's amended proof of claim that Lawler did not know about nine years earlier. The last date on the bills and invoices attached to Guild's amended proof of claim is April 23, 1975.[66] Clark stopped almost all of his

---

**62.** Lawler's brief at 28–40; Lawler's reply brief at 9–23.

**63.** § 11.207. **Malpractice actions against accountants, attorneys, veterinarians.**

   1. No action against any accountant, attorney or veterinarian to recover damages for malpractice, whether based on a breach of duty or contract, may be commenced more than 4 years after the plaintiff sustains damage and discovers or through the use of reasonable diligence should have discovered the material facts which constitute the cause of action.

   2. This time limitation is tolled for any period during which the accountant, attorney or veterinarian conceals any act, error or omission upon which the action is founded and which is known or through the use of reasonable diligence should have been known to him.

**64.** § 11.190. **Periods of limitation.**

Actions other than those for the recovery of real property, unless further limited by specific statute, can only be commenced as follows:

   *   *   *   *   *   *

   4. With 2 years:

   *   *   *   *   *   *

   (e) An action to recover damages for injuries to a person or for the death of a person caused by the wrongful act or neglect of another. The provisions of this paragraph relating to an action to recover damages for injuries to a person apply only to causes of action which accrue after March 20, 1951.

**65.** Lawler's brief at 35; Lawler's reply brief at 11.

**66.** Exhibit 14 to Lawler's reply brief.

work for Lawler on that same date.[67] The last payment of any money from Lawler to Clark was on June 13, 1975.[68] Lawler signed the notice of lis pendens in connection with his suit against Baer Ranch on February 24, 1975. Even if all of Lawler's assertions that he did not actually discover the basis for his malpractice claim until 1984 are credited, this court concludes, as did the bankruptcy court, that he *should* have discovered all material facts supporting such a claim in 1975, when he personally signed the notice of lis pendens and received the bills for Clark's services. His claim was thus time-barred under Nevada law by the end of 1977 (if the two-year statute applies) or at least by the end of 1979 (if the four-year statute applies)—unless his contentions regarding federal tolling or preemption preserve the claim. The court now turns to those remaining contentions.

---

67. Exhibit 9 to Lawler's brief at 48, 57–58.

68. *Id.*

69. **§ 29. Suits by and against bankrupts.**

\* \* \* \* \* \*

(e) A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy. Where, by any agreement, a period of limitation is fixed for instituting a suit or proceeding upon any claim, or for presenting or filing any claim, proof of claim, proof of loss, demand, notice, or the like, or where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case such period had not expired at the date of the filing of the petition in bankruptcy, the receiver or trustee of the bankrupt may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the bankrupt, within a period of sixty days subsequent to the date of adjudication or within such further period as may be permitted by the agreement, or in the pro-

### a. Statutory Tolling

Lawler's reliance on 11 U.S.C. §§ 29(e) and (f)[69] and 791[70] are misplaced at best and frivolous at worst, because those sections have virtually no application to the enforceability of Lawler's malpractice claim.

11 U.S.C. § 29(e) is a limitations statute which

> provides simply that the trustee must bring action on any claim in behalf of the estate within two years subsequent to the date of adjudication or within such further time as the federal or state law permits, provided that such law did not bar the action on the date when the petition was filed.

*In re Lawler*, 53 B.R. 166, 171 (Bankr.N.D. Tex.1985) (quoting *Herget v. Central National Bank & Trust Company*, 324 U.S. 4, 8, 65 S.Ct. 505, 507, 89 L.Ed. 656 (1945)). Depending on the circumstances of the particular case, § 29(e) may limit or extend the time for a *trustee* to bring an action, but

---

ceeding or by applicable Federal or State law, as the case may be.

(f) The operation of any statute of limitations of the United States or of any State, affecting the debts of a bankrupt provable under this title, shall be suspended during the period from the date of the filing of the petition in bankruptcy (1) until the expiration of thirty days after the date of the entry of an order denying his discharge; or (2) if he has waived or lost his right to a discharge, then until the expiration of thirty days after the filing of such waiver or loss of such right or, in the case of a corporation, if no application for a discharge is filed within the period of six months after the adjudication, then until the expiration of thirty days after the end of such period; or (3) until thirty days after the dismissal of the bankruptcy proceedings, whichever may first occur.

70. **§ 791. Suspension of statutes of limitation, etc.**

All statutes of limitation affecting claims provable under this chapter and the running of all periods of time prescribed by this title in respect to the commission of acts of bankruptcy, the recovery of preferences and the avoidance of liens and transfers shall be suspended while a proceeding under this chapter is pending and until it is finally dismissed. *See also* 11 U.S.C. § 661 (substituting phrase "claims and interests" for "claims" in § 791, otherwise language identical).

where the trustee does not bring the action, § 29(e) does not help or hinder a debtor prosecuting a case on his own behalf; it simply does not apply. *Id.* at 172. *See In re Dahlberg*, 681 F.2d 546, 548 (8th Cir. 1982); *Nairn v. McCarthy*, 120 F.2d 910, 912 (7th Cir.1941); *Natco Industries, Inc. v. Federal Insurance Company*, 69 B.R. 418, 419 (S.D.N.Y.1987). *Cf. Cunningham v. Healthco, Inc.*, 824 F.2d 1448, 1460 (5th Cir.1987). *See also* 1A Moore and King, Collier on Bankruptcy § 11.13 (14th ed. 1978).[71]

■■■■ 11 U.S.C. § 29(f) provides in pertinent part: "The operation of any statute of limitations of the United States or of any State, *affecting the debts of a bankrupt* provable under this title ..." (emphasis added). This provision tolls limitation of a creditor's claims, not the claims of a debtor suing in his own behalf. The Congressional purpose in enacting the section bears out this interpretation. *See* 1A Moore and King, Collier on Bankruptcy § 11.14 at 1224–25 (14th ed. 1978) (purpose of § 29(f) "was to remedy the situation which prevailed under former Act whereby a *creditor's* claim could be barred by the running of a statute of limitations during the bankruptcy proceedings") (emphasis added).[72]

■■■■ 11 U.S.C. § 791, the final federal statute on which Lawler relies, can be analyzed in two parts. The first part of § 791 provides, "All statutes of limitations affecting claims provable under this chapter ... shall be suspended...." This first part applies to "creditors of the debtor so as to allow for unfettered consideration by the creditors of any plan of reorganization or arrangement." *Liman v. Bank of Nova Scotia*, 337 F.Supp. 62, 66–67 (S.D.N.Y. 1971). *See* 6A Moore and King, Collier on Bankruptcy ¶ 15.02[1] at 820–21 (14th ed. 1977) (as to § 661). The second part provides, "[T]he running of all periods of time prescribed by this title in respect to the commission of acts of bankruptcy, the recovery of preferences and the avoidance of liens and transfers shall be suspended...." By the plain meaning of the text, this second part is intended to suspend the running of certain time periods prescribed by the Bankruptcy Act rather than state law or other federal time periods. *Nairn*, 120 F.2d at 912 (in context of § 661). *Accord Davis v. Security National Bank of Nevada*, 447 F.2d 1094, 1097–98 (9th Cir.1971) (tolling § 29(e) as to trustee's claims for preferential and fraudulent transfers); *In re Ira Haupt & Co.*, 390 F.2d 251, 254 (2d Cir.), *cert. denied*, 391 U.S. 916, 88 S.Ct. 1811, 20 L.Ed.2d 655 (1968) (refusing to reach § 791 issue but noting lower court's use of it to toll § 29(e)); *Liman*, 337 F.Supp. at 65–66 (second part of § 791 tolls time for recovery of preference by trustee). *See* 6A Moore and King, Collier on Bankruptcy ¶ 15.02[1] at 820–21 (14th ed. 1977) (as to § 661).

**71.** Lawler cites *Barnett v. United Air Lines, Inc.*, 738 F.2d 358, 362–63 (10th Cir.), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 594, 83 L.Ed.2d 703 (1984), for the proposition that a state statute of limitations is inapplicable if inconsistent with federal policy. Lawler then argues that application of the Nevada statute of limitations would conflict with the federal bankruptcy policy of waiting to sort out the claims of creditors until it appears that the debtor can pay. Lawler points to Act Rule 306 and 11 U.S.C. § 93(f), which do not limit the time in which objections may be brought, as the sources of this policy. *See* Lawler's reply brief at 15–16. This argument, the foundation of Lawler's federal bankruptcy policy contention, lacks merit for the reasons discussed in Parts II(C)(1) and (2).

Another reason Lawler's argument must fail is that his malpractice claim was created not by Congress but by state law. Although it was brought in the broader context of a bankruptcy proceeding, the applicable period of limitations was established by the same sovereign (the state of Nevada) that created the substantive right. *Cf. Occidental Life Insurance Company of California v. Equal Employment Opportunity Commission*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). Whether § 29(e) applies or not, the Nevada statute of limitations is relevant in determining whether a claim brought by the debtor on his own account is time-barred. *Lawler*, 53 B.R. at 171–72.

**72.** Lawler urges that Act Rule 306(c), in tandem with 11 U.S.C. § 29(f), grants him an indefinite time to file his malpractice claim. That argument is addressed above in Part II(C)(1) and (2). The court would add here that whether claims under Rule 306(c) are subject to a procedural deadline under the Act Rules does not answer whether a statute of limitations outside those rules may apply to such claims.

### b. Equitable Tolling

As a corollary to his argument under Act Rule 306(c), Lawler maintains that his claim for malpractice was a compulsory counterclaim entitled to equitable tolling. His theory is that if Guild's proof of claim was timely, then his counterclaim to that proof of claim cannot be considered stale when both arose out of the same transaction.[73] The court disagrees.

 Assuming *arguendo* that Lawler's claim was brought in the context of an adversary proceeding, that proceeding could not have been commenced by Guild's proof of claim, which no one disputes was brought pursuant to Code Rule 9014 or Act Rule 914. An adversary proceeding would have had to be commenced by *Lawler's* claim for malpractice. If Lawler's claim commenced an adversary proceeding, then the only *counterclaims* procedurally possible would have come from Guild. Consequently, the principle that the statute of limitations on a compulsory counterclaim is tolled if it has not expired on the day the original claim is brought simply does not apply—even under the charitable assumption that Lawler was operating in the context of an adversary proceeding. 6 Wright and Miller, Federal Practice and Procedure § 1419 at 109 and n. 78 (West 1971 and Supp.1989). *See* 9 King, Collier on Bankruptcy ¶ 7013.04 at 7013–6 to 7013–7 (15th ed. 1988); 13 Moore and King, Collier on Bankruptcy ¶ 713.03[1] at 7–204 to 7–205 (14th ed. 1977).

To the extent that Lawler's objection sought affirmative relief, it was barred by limitations. *In re Smith,* 737 F.2d 1549, 1553–54 (11th Cir.1984); *Basham v. Finance America Corporation,* 583 F.2d 918, 927–28 (7th Cir.1978), *cert. denied,* 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). On the other hand, his counterclaim, though barred by limitations, could still be employed defensively. 6

*Wright & Miller,* above, § 1419 at 110 and n. 81. *Accord MBank Fort Worth, N.A. v. Trans Meridian, Inc.,* 820 F.2d 716, 720 (5th Cir.1987) (Texas law); *In re Larsen,* 80 B.R. 784, 791 (Bankr.E.D.Va.1987); *Matter of Mid Atlantic Fund, Inc.,* 60 B.R. 604, 609–11 (Bankr.S.D.N.Y.1986); *Matter of Supreme Synthetic Dyers, Inc.,* 3 B.R. 189, 191 (Bankr.E.D.N.Y.1980). The dismissal of Guild's claim with prejudice, however, gave Lawler all the relief to which his malpractice claim, *as a defense,* entitled him.

### III. Conclusion

For the reasons stated herein, the bankruptcy court's memorandum opinion and order of July 30, 1987 are affirmed.[74]

SO ORDERED.

---

**73.** Lawler's reply brief at 13–14 (citing *Nicholas v. United States,* 384 U.S. 678, 683, 86 S.Ct. 1674, 1679, 16 L.Ed.2d 853 (1966)).

**74.** Because the court is not persuaded that oral argument would illuminate the issues on this appeal, Lawler's request for oral argument is denied.